**UNITED STATES, Appellee,**

v.

**Loren D. KAZENA, Private, U.S. Marine Corps, Appellant.**

No. 38,784.
NCM 79 1084.

U. S. Court of Military Appeals.

April 27, 1981.

For Appellant: *Lieutenant Commander P. B. Haskel*, JAGC, USN (argued).

For Appellee: *Lieutenant Commander John C. Vinson*, JAGC, USN (argued); *Commander T. C. Watson, Jr.*, JAGC, USN (on brief).

Opinion

FLETCHER, Judge:

On February 5, 1979, the appellant was arraigned on four specifications of unauthorized absence, in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886. On February 7, 1979, the military judge accepted the appellant's pleas of guilty to these offenses. The appellant was then sentenced by the judge to a bad-conduct discharge, 2 months' confinement at hard labor, and forfeitures. The convening authority approved this sentence, except for confinement in excess of 1 month. The United States Navy Court of Military Review, 8 M.J. 814, affirmed this conviction.

Our attention is called by the Judge Advocate General of the Navy[1] to the circum-

1. The Judge Advocate General of the Navy has referred this court-martial for our review in accordance with Article 67(b)(2), UCMJ, 10 U.S.C.A. § 867(b)(2), 9 M.J. 7. In particular, he asks:

I

WAS THE UNITED STATES [NAVY] COURT OF MILITARY REVIEW CORRECT WHEN IT HELD THAT FOR THERE TO BE A PRETRIAL AGREEMENT, THAT AGREEMENT MUST ENCOMPASS ALL THE CHARGES AND SPECIFICATIONS UPON WHICH AN ACCUSED IS ARRAIGNED?

II

IF THE FIRST QUESTION IS ANSWERED IN THE AFFIRMATIVE, DOES THE ACT OF REFERRAL OF AN ADDITIONAL CHARGE AND SPECIFICATION TO TRIAL AUTOMATICALLY VOID A PREEXISTING PRETRIAL AGREEMENT AS TO ALL THE OTHER CHARGES AND SPECIFICATIONS UPON WHICH AN ACCUSED IS ARRAIGNED, IN THE ABSENCE OF A PROVI-

stances surrounding the acceptance of the appellant's pleas of guilty by the military judge. Additional information is needed to appreciate the particular subjects of his inquiries.

On October 27, 1978, Colonel Slack, the special court-martial convening authority in this case, referred to trial against the appellant two specifications of unauthorized absence. The alleged periods of unauthorized absence were April 18 to 19, 1978, and May 2 to September 10, 1978. These two specifications were originally referred as a single Charge under Article 86, *supra*. On November 21, 1978, the convening authority amended his referral to include an Additional Charge under Article 86, *supra*. It embraced a third specification of unauthorized absence which covered an alleged period from November 1 to 7, 1978.

Sometime thereafter the appellant offered a pretrial agreement to the convening authority, Colonel Slack. In this signed offer, the appellant agreed to plead guilty to the above Charge (two specifications) and the Additional Charge (one specification), if the convening authority promised to suspend any punitive discharge his court-martial might adjudge for these offenses. On January 17, 1979, the appellant again was absent without leave. His offer of a pretrial agreement, however, reached the convening authority, who signed this agreement on January 18, 1979, without knowledge of this new offense. The appellant returned to military control on January 22, 1979. On January 29, 1979, the convening authority again amended his referral order to include Additional Charge II, a fourth specification of unauthorized absence covering this last period.

On February 5, 1979, the appellant was arraigned on the above four specifications of unauthorized absence. The military judge prior to accepting these pleas inquired into their providency and the existence of a pretrial agreement. Defense counsel indicated such an agreement did exist, and the above agreement dated January 18, 1979, was accepted by the court as Appellate Exhibit I. The military judge had several problems with this agreement,[2] most important was the fact that the agreement did not cover Additional Charge II. After a brief recess, trial counsel notified the military judge that the convening authority had earlier disapproved the agreement, but his decision had not reached the law center. He indicated to the military judge that the convening authority now wished to withdraw from the pretrial agreement. Defense counsel insisted that the document was controlling and the court-martial should proceed accordingly.

The military judge, concerned about his power to rule effectively on this question, adjourned the court to afford both parties an opportunity to agree on the terms of the pretrial agreement, if possible. Otherwise, he indicated there would be no pretrial agreement at all. Court was reopened on February 7, 1979. Defense counsel offered Appellate Exhibit II to the military judge. This was a second pretrial agreement between the two parties. It encompassed the four specifications of unauthorized absence on which the appellant was arraigned. The military judge accepted the agreement and the appellant's guilty pleas. The sentencing portion of the court-martial proceeded and the military judge announced the punishment as indicated earlier. Then the military judge reviewed the sentence provisions in the agreement. Its only limitation was that the convening authority would remit confinement at hard labor in excess of 30 days if the accused received a bad-conduct discharge and submitted a request for appellate leave prior to the thirtieth day of his confinement.

SION IN THAT AGREEMENT PROVIDING THAT MISCONDUCT BY THE ACCUSED PRIOR TO TRIAL WOULD INVALIDATE THE AGREEMENT?

**2.** At the arraignment of appellant, the two specifications brought under the original charge appeared redesignated as two specifications under Additional Charge I under Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886. The pretrial agreement, however, still treated these specifications as being under the Charge which no longer existed.

Before the Court of Military Review, the appellant challenged the failure of the convening authority to suspend his punitive discharge as provided in the original pretrial agreement. That Court held there was no pretrial agreement as claimed by the defense. It stated:

We hold that there is no pretrial agreement if that agreement does not encompass all the charges and specifications under which an accused is arraigned.

The Court of Review affirmed appellant's conviction and the approved sentence.

I

■ The first certified question by the Judge Advocate General and the ruling of the Court of Military Review invite this Court to interfere in a broad way with discretionary decisions made by the parties concerning legitimate subjects of the plea-bargain process. *Cf.* Moyer, *Justice and The Military* § 2–456 (1972). In the past, this Court, without mandating particulars, has only said that the pretrial agreement should be limited to bargaining for charges, sentence, and pleas. *United States v. Cummings,* 17 U.S.C.M.A. 376, 38 C.M.R. 174 (1968). The degree to which the agreement must address these permissible matters is a question not essential to our review of this case nor is it one to be readily embraced. *See Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). In any event, it should be noted that such partial pretrial agreements seem unsuited to the military justice system because of the President's preference for a single sentence for all offenses for which an accused is found guilty. *See generally* para. 76, Manual for Courts-Martial, United States, 1969 (Revised edition). *Cf.* Wright, *Federal Practice and Procedure* § 527.

II

Turning to the second certified question, it should be rephrased in light of the critical fact of the case before us, *i. e.* the request for withdrawal by the convening authority. Moreover, in view of the reluctance of this Court to decide similar questions strictly on contract-law grounds, such a reformulation seems particularly appropriate. The critical question is whether as a matter of military due process the trial judge was correct in permitting the convening authority to withdraw from the original pretrial agreement because of the subsequent preferral and referral of an additional criminal charge against the appellant at the same court-martial. *See Virgin Islands v. Scotland,* 614 F.2d 360 (3rd Cir. 1980); *Cooper v. United States,* 594 F.2d 12 (4th Cir. 1979).

The first matter to be addressed is the apparent misgivings of the military judge as to his role in the plea-agreement process. The record of trial indicates that he was hesitant to rule whether Appellate Exhibit I constituted a binding pretrial agreement in the face of disagreement from the convening authority. This reluctance stemmed from his doubt as to his authority after conclusion of the court-martial to ensure the agreement would be complied with by the convening authority in accordance with his ruling.

■ This Court operates on the justified presumption that military authorities respect and comply with the rulings of all courts in the military justice system. This was the intent of Congress, which was tasked by the Constitution with the function of regulating our armed services. U.S. Const. art. I, § 8, cl. 14. There is absolutely no justification for the military judge to believe that this convening authority would not similarly act in accordance with his ruling on this matter.

■ In any event, this Court has stated before that it is the military judge at a court-martial who is responsible for the immediate supervision of pretrial agreements in the military justice system. *United States v. Lanzer,* 3 M.J. 60 (C.M.A.1977). *See United States v. Dawson,* 10 M.J. 142, 149 (C.M.A.1981). In this role, he has the duty to make sure that plea-bargain negotiations are conducted in a reasonably fair manner to the accused and that the convening authority intends to perform as promised. *Santobello v. New York,* 404 U.S. 257,

262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971); *see generally* Westen and Westin, *A Constitutional Law of Remedies for Broken Plea Bargains*, 66 Cal.L.Rev. 471 (1978). To accomplish this task, he need not refer the parties to a federal civilian court because Congress did not intend that he stand powerless or alone in the military justice system. Under Article 45, UCMJ, 10 U.S.C. § 845, the military judge has considerable power to vacate a guilty plea when matters are brought to his attention after arraignment which affect the plea's providency. Moreover, in view of our decision in *United States v. Mickel*, 9 U.S.C.M.A. 324, 26 C.M.R. 104 (1958), a motion to dismiss might lie in those egregious cases where the Government unjustifiably refuses at trial to abide by its agreement. *See* para. 68, Manual, *supra*. Finally, questions concerning later noncompliance with terms of a pretrial agreement are proper matters for appellate review by the Courts of Military Review and this Court.

■ The second matter to be addressed is the propriety of the convening authority's referring the fourth specification of unauthorized absence to court-martial after signing the original pretrial agreement. Such conduct, if unlawful, would not support the military judge's ruling granting the convening authority's request for withdrawal. *See Runkle v. United States*, 122 U.S. 543, 7 S.Ct. 1141, 30 L.Ed. 1167 (1887). Good-faith compliance with the Code is an essential requirement in any action taken by the convening authority in his special pretrial role. *See United States v. Hardin*, 7 M.J. 399 (C.M.A.1979).

At the outset, it must be noted that this was a special court-martial, so the convening authority had no particular responsibilities under Article 32, UCMJ, 10 U.S.C. § 832, prior to this referral. Examining the record of trial, we find that Additional Charge II was referred to trial in accordance with Article 30, UCMJ, 10 U.S.C. § 830. The Code does not otherwise speak to the referral of additional charges to a court-martial already properly convened for other charges. This line of inquiry, however, is not at an end.

The Manual for Courts-Martial specifically authorizes such action by the convening authority. Para. 33*j*, Manual, *supra*. It does so consistent with another procedural rule that all "charges against an accused . . . ordinarily should be tried at a single trial." Paras. 30*g* and 33*h*, Manual, *supra*. Any additional charges which are referred to trial should "relate to transactions not known at the time" of the original preferral "or to offenses committed after the original charges were preferred." It also must be accomplished "before arraignment" of the military accused on the original charges. Para. 24*b*, Manual, *supra*.

■ In the January pretrial agreement, there is no promise by the convening authority that he would not exercise this referral option if the situation appropriately presented itself. This Court has been reluctant to find such a promise exists by implication. *See United States v. Cox*, 22 U.S.C.M.A. 69, 71, 46 C.M.R. 69, 71 (1972). Moreover, there is no indication in the record of trial that the convening authority exercised this referral power in bad faith as an attempt to repudiate his earlier agreement. The additional offense was alleged to have occurred after the original charges were preferred and the referral was accomplished prior to the accused's arraignment on the original charges. Finally, there was no objection by defense counsel at the court-martial to the subsequent referral of the additional specification of unauthorized absence. Accordingly, the referral of Additional Charge II to the accused's special court-martial was proper in the present case.

■ The final question to be decided is whether the military judge nonetheless abused his discretion in granting the convening authority's request for withdrawal on this ground. Although not directly stated, he refused to honor the original agreement signed by the parties because of the subsequent preferral and referral of an additional charge by the convening authority. Such a ruling in effect granted the convening authority's request that he be permitted

to withdraw from his earlier agreement. This ruling was proper in the present case for several reasons.

First, the convening authority, through trial counsel, came forward and demonstrated to the military judge that "interval extenuating circumstances affecting the propriety of the" original agreement "that were unknown to and not reasonably discoverable by the government when the" agreement "was made have supervened or become known." *Cooper v. United States, supra* at 19. In such a situation, the convening authority cannot be said to have acted in a fundamentally unfair manner either by not keeping his word or by arbitrarily destroying expectations he created in the appellant by signing the original agreement. *See Westen and Westin, supra* at 524–28.

Second, the appellant did not go forward and challenge the government's demonstration of good cause for its requested withdrawal from the agreement. As indicated earlier, there was no question raised in this case as to the propriety of the additional referral, or that such a referral was accomplished to simply justify the convening authority's request for withdrawal from the original agreement. The defense chose instead to rely on a technicality in the agreement, *i. e.*, the absence of a specific withdrawal provision covering such a contingency. This contract law argument pales before the government's demonstration of good cause in this sensitive criminal law area. *See United States v. Dawson, supra* at 148–50. In such a situation, there can be no doubt that the Government was acting fairly in the plea-agreement process.

Third, the appellant also did not demonstrate that he relied to his detriment on the original pretrial agreement. *Virgin Islands v. Scotland, supra.* In a narrow sense, he has lost the benefit of his earlier plea bargain. *See Westen and Westin, supra* at 513. However, he had no realistic expectation, even under his original agreement, that a suspended bad-conduct discharge would still be considered an acceptable punishment if he also pleaded guilty to an additional unknown specification of unauthorized absence. It is also noted that the appellant did not show that he was hindered in the preparation of his defense because of his reliance on the earlier agreement. *See Shields v. State*, 374 A.2d 816, 820 (Del.1977).

Finally, the military judge made clear to the appellant that he would be permitted to withdraw his offered guilty pleas. *Cf. United States v. Dawson, supra.* In this posture, the judge also made clear to the appellant that his decision to waive or exercise other rights at the court-martial based on his earlier tender of pleas could be reconsidered. Any loss actually suffered by the appellant in such a situation was significantly reduced.

 In view of the above, it is clear that the military judge was correct in sending the convening authority and the accused back to the bargaining table.[3] Such a decision reflects the traditional concern of this Court that if plea-bargaining is employed in the military criminal justice system, it be done in a manner which is reasonably fair to the military accused. This is consistent with the Supreme Court's position on plea-bargaining. *Santobello v. New York, supra.* At the same time, however, it reflects concern for the realities of our criminal justice system, which dictate that some flexibility be afforded prosecutorial authorities in the good-faith performance of their duties. Contract-law principles or the letter of the contract will not be permitted to operate in the military justice system in

---

3. In the present case, the Government came forward and demonstrated sufficient "interval extenuating circumstances" which would justify its withdrawal from the original pretrial agreement. *Cooper v. United States*, 594 F.2d 12, 19 (4th Cir. 1979). Accordingly, it is unnecessary to decide today whether the convening authority has the right to withdraw from a signed pretrial agreement prior to acceptance of the pleas for any reason as long as the military accused has not detrimentally relied on it. *See Virgin Islands v. Scotland*, 614 F.2d 360 (3rd Cir. 1980); *Shields v. State*, 374 A.2d 816 (Del.1977); *United States v. Jacques*, 5 M.J. 598 (N.C.M.R.1978); Moyer, *Justice and The Military* § 2 455 (1972).

a manner unaffected by either of these important public interests. *United States v. Andreason*, 23 U.S.C.M.A. 25, 28, 48 C.M.R. 399, 402 (1974).

The decision of the United States Navy Court of Military Review is affirmed.

EVERETT, Chief Judge (concurring in the result):

Plea bargaining involves a form of contract, and, therefore, contract law is often relied on in interpreting and applying pretrial agreements. Thus, as Judge Phillips noted in *Cooper v. United States*, 594 F.2d 12, 15–16 (4th Cir. 1979) (footnote omitted):

> Both before and since *Santobello* [*v. United States*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)] the courts have understandably drawn heavily on the ready analogies of substantive and remedial contract law to supply the body of doctrine necessary to order plea bargaining practices and to afford relief to defendants aggrieved in the negotiating process. To the extent therefore that there has evolved any general body of "plea bargain law," it is heavily freighted with those contract law analogies.

Similarly, in *Virgin Islands v. Scotland*, 614 F.2d 360, 364 (3rd Cir. 1980) (footnote omitted), Judge Gibbons commented:

> The bargaining process has often been analogized to contract principles, and plea agreements are often likened to unilateral contracts—consideration is not given for the prosecutor's promise until the defendant actually enters his plea of guilty.

However, in *Cooper*, the Court of Appeals also made it clear that something more than traditional contract law is involved in plea bargains and that there is a constitutional right of the defendant to be treated with "fairness" throughout the entire process. Accordingly, the court ruled that the Government was bound by a plea bargain which the prosecutor had offered but had then withdrawn before acceptance had been communicated by the defense—even though the court acknowledged that, under traditional contract principles, there was neither a contract nor a basis for promissory estoppel.

In *Virgin Islands v. Scotland, supra*, the Court of Appeals for the Third Circuit, although rejecting the *Cooper* rule that an unconsummated plea bargain could be enforced despite the absence of any detrimental reliance thereon, apparently accepted the premise that plea bargains need not always be governed by conventional contract law, "since constitutional standards require more than contract principles." 614 F.2d at 364.

The present case illustrates how conventional contract law does not apply fully to the plea-bargaining process. Here, the original pretrial agreement, which recited that the agreement originated with Kazena and his counsel,[1] purports to be in the form of a bilateral contract, whereunder the accused agrees that he will plead guilty to certain charges. Such an agreement to plead guilty *in futuro* is of questionable validity, and clearly is unenforcible, in light of the traditional safeguards surrounding waiver of constitutional rights by the entry of a guilty plea. Indeed, the performance of the plea bargain is so completely within the control of an accused by reason of the provisions of Article 45, Uniform Code of Military Justice, 10 U.S.C. § 845,[2] and the requirements imposed by this Court on the acceptance of guilty pleas,[3] that until the

---

1. In military practice offers for pretrial agreements have originated—at least, purportedly—with the accused and his counsel. Thus, the problem of *Cooper v. United States*, 594 F.2d 12 (4th Cir. 1979), which concerned withdrawal of an unaccepted offer made by the prosecutor, would not be encountered.

2. In requiring setting aside guilty pleas because the accused has introduced matter inconsistent therewith, Article 45, Uniform Code of Military Justice, 10 U.S.C. § 845, goes far beyond the protection granted generally in state and federal courts.

3. Our requirements are so strict that time and again it is obvious from the records of trial that the defense counsel is making every possible effort to meet those requirements because he considers that his client has made a good bargain, and he does not wish the benefits thereof

sentence has actually been imposed, the agreement is really illusory. The accused can readily escape therefrom if he chooses.[4] Under these circumstances, I am especially reluctant to hold that a convening authority is bound by a pretrial agreement until the accused has provided the bargained-for performance. Moreover, as was pointed out in *Virgin Islands v. Scotland, supra,* the accused usually has a completely adequate remedy when the pretrial agreement is vacated namely, trial on pleas of not guilty.

Where an accused has demonstrated detrimental reliance on a plea bargain, for example, by failure to call witnesses as to guilt or innocence who might otherwise have been available, I would enforce the plea bargain. *Virgin Islands v. Scotland, supra.* Conceivably some other situations will reveal such "unfairness" on the part of the convening authority in connection with a plea bargain that performance by the Government should also be compelled. *Cf. Cooper v. United States, supra.*[5] In the case at bar, there is no indication of detrimental reliance by the appellant, nor of unfairness on the convening authority's part. Therefore, despite the absence from the pretrial agreement of any provision purporting to allow the convening authority to withdraw from the agreement, he was free to do so until the plea of guilty had been accepted.[6]

With respect to the other issue, which concerns the necessity to include all charges and specifications in a plea bargain, I perceive no reason that a plea bargain must be all-inclusive. Typically, because of the unitary sentence in military law, a convening authority will be unwilling to limit himself as to the sentence he will approve when it is contemplated that some charges will be

contested at trial on a plea of not guilty. However, if the convening authority chooses to do so, and I recall observing in some records of trial that this seems to have occurred, then no legal doctrine is offended. A convening authority may consider that a certain sentence will be adequate to satisfy the ends of justice even if an accused is found guilty of certain charges as to which he plans to enter a plea of not guilty. If the convening authority is of this view, why should a pretrial agreement not be allowed which sets a ceiling on sentence in return for a guilty plea on designated charges? However, if the Government reserves the right to offer evidence on a charge to which, under the plea agreement, the accused will not plead guilty, then this reservation should be made explicitly in the agreement itself in order to avoid any later claim of a misunderstanding.

COOK, Judge (concurring in the result):

I agree with the majority that the convening authority properly withdrew from the pretrial agreement. However, I write separately to express my own view that the permission ᴏᴊ the trial judge was not required. *See* my separate opinion in *United States v. Lanzer,* 3 M.J. 60, 63 (C.M.A.1977). Additionally, under military law, one sentence is imposed for all the offenses before the court. *See* my separate opinion in *United States v. Castrillon-Moreno,* 7 M.J. 414, 416 (C.M.A.1979). Thus, the referral of an additional charge to trial, in the absence of bad faith, creates such an inconsistency with an existing pretrial agreement that it must be treated as void. Accordingly, I would answer both certified issues in the affirmative and affirm the decision below.

to be lost by the military judge's refusal to receive the pleas of guilty.

4. For example, he can make an unsworn statement not subject to cross-examination or the sanctions of perjury which, by setting up matter inconsistent with his guilty pleas, induces the military judge to set it aside.

5. However, military practice tends to prevent the occurrence of such situations. *See* n. 1, *supra.*

6. Even the offer of the plea of guilty in open court does not usually establish detrimental reliance, since any possibility of prejudice generally can be dealt with by continuances, a mistrial, or otherwise.