Daniel J. SHEPARDSON, Captain, U.S. Air Force, Petitioner,

v.

Colonel John E. ROBERTS, Jr., Military Judge, et al., Respondents.

Misc. No. 82–24.

U.S. Court of Military Appeals.

Jan. 3, 1983.

For Petitioner: *Major Alexander S. Nicholas* (argued); *Colonel George R. Stevens* (on brief); *Captain Harold C. Davis, Captain James Lionell Owens.*

For Respondents: *Major Michael J. Hoover* (argued); *Colonel Kenneth R. Rengert* (on brief).

*Opinion of the Court*

EVERETT, Chief Judge:

On November 10, 1981, petitioner was charged with conduct unbecoming an offi-

cer and gentleman by using marihuana in the presence of enlisted members of the Air Force, in violation of Article 133, Uniform Code of Military Justice, 10 U.S.C. § 933, and with use, transfer, and possession of marihuana and introduction of marihuana into a military aircraft, in violation of Article 134, UCMJ, 10 U.S.C. § 934. Two weeks later these charges were referred to a general court-martial by Major General Don H. Payne, who then commanded Keesler Technical Training Center at Keesler Air Force Base, Mississippi.

On March 4, 1982, petitioner submitted an Offer For Pretrial Agreement, wherein he proposed to plead guilty to all specifications and charges in return for a limitation on the sentence to be approved. The staff judge advocate, Colonel Farina, recommended that this offer not be accepted and personally discussed the offer with General Payne, who, nonetheless, decided to enter into the agreement because, in his opinion, the punishment proposed by petitioner was severe enough.

On March 8, 1982, for reasons unrelated in any way to General Payne's exercise of discretion as convening authority in military justice matters, he was replaced as commander of the Technical Training Center by Major General Thomas C. Richards, who also became the general court-martial convening authority. The next day Colonel Farina informed General Richards of the status of petitioner's case, discussed the pretrial agreement with him, and provided him with a copy of the report of the Article 32 investigation, the pretrial advice of the staff judge advocate, the pretrial agreement, and Colonel Farina's original memorandum recommending against acceptance of that agreement. Colonel Farina also informed Major General Richards that paragraph 4–8i of Air Force Manual 111–1 provides:

> The convening authority may withdraw from the plea agreement for any reason before arraignment, but this power should only be exercised with due regard for fairness.

On March 10, 1982, General Richards gave written notice to petitioner's counsel that, having "reviewed the matters pertinent to the Pretrial Agreement entered into by my predecessor in command on 5 March 1982 [,] [i]n my opinion, this Pretrial Agreement does not meet a standard of fairness to both the accused and the United States," so, "[p]ursuant to authority vested in me under AFM 111–1, paragraph 4–8i, I hereby withdraw from the Pretrial Agreement entered into by my predecessor in command. The Pretrial Agreement of 5 March 1982 in the case of *United States v. Shepardson* shall hereafter be null and void."

When petitioner was arraigned on March 18, his counsel stated that

> it is the defense's understanding that there is some concern as to a pretrial agreement that has been entered into between the accused and the convening authority, and the case law clearly shows if there is such a concern on the part of the Government, they must make a motion to withdraw that agreement. We would make an offer of proof that there is an agreement between the convening authority and the accused at this time.

Trial counsel responded that he was not aware of any requirement that "the Government ... make a motion to withdraw from a pretrial agreement where they have a right to do so"; and he added:

> If the accused wishes to make a motion for a specific enforcement of an existing pretrial agreement, that would seem to be a matter for a motion for appropriate relief to be made by the defense, and I would suggest that this matter be resolved prior to the entry of a plea, in order to prohibit any possibility of prejudice to the accused.

As the military judge promptly ascertained, it was the Government's position that no pretrial agreement existed, while the defense position was exactly contrary.

After the parties stipulated to relevant facts and argument had been heard, the military judge made his findings of fact and conclusions of law. He reasoned that under the terms of petitioner's original of-

fer for a pretrial agreement, "if simple contract law were to be applied, Major General Richards had an absolute right to withdraw from the agreement. However, case law makes it plain that contract law can not be directly applied."

Among his other conclusions were these:

3. I have no doubt that had the accused entered pleas of guilty or otherwise acted to his detriment in reliance upon the pretrial agreement prior to its withdrawal General Richards would have been obliged to fulfill the promises made by General Payne. But as none of the conditions precedent set out in the offer had occurred, no obligation to take any particular action existed when General Richards withdrew from the agreement on 10 March 1982.

4. I am of the opinion that the statement that the power to withdraw should be exercised with "due regard for fairness" found in paragraph 4–8i refers to regard for fairness to the accused rather than fairness to the accused and the United States. But at the same time, I am of the opinion that the consideration of fairness arises only in the context where the accused has acted in some substantial way to his detriment in reliance on the acceptance of his offer. Here there has been no detriment to the accused. He was on 10 March 1982 and is at the present time in precisely the same position with respect to these charges as he was on 4 March 1982 when he made his offer. Accordingly, he has not been treated unfairly in any manner. He may elect trial on these charges or he may enter into further negotiations with the new convening authority, or may take any other action he desires with regard to the charges.

Accordingly, the judge granted "the motion to withdraw." Then noting defense counsel had indicated that, in relying on the pretrial agreement, petitioner had made incriminating remarks to various persons, the judge further commented, "I would think that those statements would not be admissible at a trial, if such statements were made."

Next, the defense moved for dismissal of the charges because the Government had not complied with "due process requirements of fairness" by its "conduct, in suggesting and creating reasonable expectations on the part of the accused, and then crushing them wholeheartedly." To this motion the judge responded:

Well, there is nothing before the court that shows any misconduct on the part of any of the participants, either the Staff Judge Advocate, General Payne, or General Richards, let alone any egregious misconduct on the part of anyone.... I would find that there has been no egregious—this is not an egregious case, and there has been no misconduct, and therefore the motion to dismiss is denied.

Finally, defense counsel moved for a continuance in order to apply for extraordinary relief. The trial counsel did not oppose this motion and it was granted "tentatively" by the judge, who then set the new trial date for April 19, 1982.

After petitioner's application for extraordinary relief had been filed in our Court, we ordered the Government to show cause why relief should not be granted. Having received briefs from the parties in response to that order and having heard extensive oral argument, we now identify these two issues: (1) Can the petition be entertained in the proper exercise of our extraordinary writ jurisdiction? and (2) If the petition is considered on its merits, should the relief sought be granted? The first question we answer in the affirmative; the second, in the negative.

I

Many reasons exist for an accused to plead guilty and free the prosecution from its burden of proving the charges against him. Sometimes the plea can be part of a bargain whereby he obtains concessions from the prosecution. However, apart from any pretrial agreement, there may be substantial advantages from a plea of guilty—such as speedier disposition of the case and providing a means for demonstrat-

ing that the accused repents and is suitable for rehabilitation.[1] Of course, the Government also benefits when a plea of guilty is entered, because it thereby avoids the inconvenience, delay, and expense of bringing witnesses to prove its case beyond a reasonable doubt.

In the present case, the benefits to be derived would seem especially great if a guilty plea were entered. Although the case is being tried in Mississippi, the alleged offenses took place in the Philippines; so some of the witnesses may have to be brought from great distances. One of petitioner's two military counsel is currently assigned to Clark Air Base in the Philippines; therefore, his attendance for a protracted trial may also be burdensome.

However, as matters now stand, the parties are in something of a quandary and the entry of a guilty plea seems unlikely. Defense counsel are reluctant to undertake to negotiate a new pretrial agreement for fear they will waive petitioner's rights under what he claims to be an existing agreement. In any event, if petitioner attempted to plead guilty, the judge would be reluctant to accept such a plea, as long as petitioner was insisting that a plea bargain existed and the Government was making the contrary claim. *Cf. United States v. Care,* 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969).

■ Admittedly, our Court's rendition of three separate opinions in *United States v. Kazena,* 11 M.J. 28 (C.M.A.1981), has left unclarified a number of issues as to plea bargaining in military justice and these issues are not limited to the case at bar. Therefore, in view of the special circumstances of this case, the time and energy that can be conserved here by reviewing promptly the judge's ruling,[2] and the opportunity to resolve promptly some recurrent issues that have now been thoroughly briefed and argued, we believe that it is proper to exercise our extraordinary writ jurisdiction by considering the petition on its merits. However, our willingness to consider this petition for extraordinary relief should not be misconstrued as an open invitation for other accused to petition our Court for extraordinary relief as to the interpretation or application of pretrial agreements, in lieu of the usual processes of appellate review.[3]

## II

Basically we agree with the conclusions reached by the military judge. The offer of a pretrial agreement submitted by petitioner stated, "I understand that this offer, when accepted by the convening authority will constitute a binding agreement"; but later it provided that "[t]his agreement will also be cancelled and of no effect if any of the following occurs: ... [w]ithdrawal by either party to the agreement prior to the trial." Therefore, in a sense, the document seems self-contradictory, since an agreement from which either party can withdraw is not fully "binding."

■ Respondent contends that the ambiguity must be resolved against the petitioner, since he drafted the offer. To this, petitioner replies that the language used was, for all practical purposes, dictated by the provisions of a service directive, AFM 111–1. Our own conclusion, upon reading the offer as a whole and construing it in context, is that, subject to one limitation, it allowed either party the option to withdraw

---

1. Guilty pleas may properly be taken into account by the sentencing authority. Para. 8–5, *Military Judges' Guide,* DA PAM. 27–9 (June 1971).

2. *Cf. Brookins v. Cullins,* 23 U.S.C.M.A. 216, 49 C.M.R. 5 (1974); *Chenoweth v. Van Arsdall,* 22 U.S.C.M.A. 183, 188, 46 C.M.R. 183, 188 (1973).

3. We do not believe that our Bar will seek to abuse our extraordinary writ jurisdiction. Certainly, they have not done so in the past, as reflected by the fact that in recent years the

number of petitions for extraordinary review filed with us has been relatively constant. The following table shows the number of petitions for extraordinary relief filed in fiscal years 1980–1982:

| Year | Petitions |
|------|-----------|
| 1980 | 47 |
| 1981 | 59 |
| 1982 | 56 |

up until the time the plea was entered. In practice, an accused has this option in any event, since there is no way to compel specific performance on his part and since Article 45 of the Code, 10 U.S.C. § 845, assures that a guilty plea cannot be accepted by a court-martial unless the plea is totally voluntary and consistent with the evidence. *See United States v. Kazena, supra* (Everett, C.J., concurring in the result). Thus, if in fact the accused can withdraw from the pretrial agreement even though his offer referred to a "binding agreement," it seems only fair to construe the agreement as contemplating a corresponding right for the Government.

Some effect can nonetheless be given to the reference to "binding agreement." For one thing, the Government is bound, in that detrimental reliance by an accused will give him a basis for judicial relief, just as under conventional contract law a party may be subject to promissory estoppel because of the other party's detrimental reliance. *See Restatement Contracts* § 90 (1932); *Restatement (Second) of Contracts* §§ 34*d*, 344, 349; Fuller and Perdue, *Reliance Interest in Contract Damages,* 46 Yale L.Rev. 52–96; 373–420 (Nov. 1936, Jan. 1937). The accused is bound to the extent that his nonperformance would normally entitle the Government to a continuance so that it can arrange to prove its case beyond a reasonable doubt.

■ However, even if we do not construe the agreement as directly protecting detrimental reliance by the petitioner, we agree with the judge's conclusion that, apart from contract law, principles of fairness and due process compel the Government to abide by a pretrial agreement on which an accused has reasonably relied to his detriment. *Cf. Virgin Islands v. Scotland,* 614 F.2d 360 (3rd Cir.1980). The Government, while apparently conceding that an accused's detrimental reliance on a plea bargain should be protected, seems to equate such reliance with the entry of a plea of guilty. We do not construe the concept so narrowly and, in our view, detrimental reliance may include any action taken by an accused in

reliance on a pretrial agreement which makes it significantly more difficult for him to contest his guilt on a plea of not guilty.

■ Petitioner seeks to bring himself within this principle by claiming that, after entry into the pretrial agreement, he made incriminating admissions which could be used against him. However, the judge indicated his intent to exclude any evidence of such admissions, so, in our view, petitioner's "reliance" will thereby be prevented from being detrimental.

A distinction may also be drawn between the present situation and one in which an accused, relying on a pretrial agreement, has provided detailed information—perhaps in the form of a confessional stipulation—which was not previously available to the Government and would materially aid its case. There, the difficulty of sifting out information otherwise available to the Government for the proof of its case from that which was provided by the accused might support a finding of detrimental reliance. Moreover, we recognize that under such circumstances an accused who has once "let the cat out of the bag" may practically and psychologically be in an inferior position either for plea bargaining or for defending his case.

In the present case, however, there is nothing to indicate that any of these circumstances exist. The interval between entry into the pretrial agreement and notice of the withdrawal therefrom was so brief that it seems unlikely that petitioner's trial preparation could have been substantially or irremediably affected. In light of the relief proposed by the judge, petitioner's admissions of guilt which allegedly followed in the wake of the pretrial agreement would not constitute detrimental reliance. Likewise, personal plans made by petitioner on the assumption that by a certain date he would have completed the maximum confinement allowed under the original pretrial agreement do not constitute "detrimental reliance" that will bar withdrawal by the Government. Finally, we perceive no benefit received by the Government which in any way might make it unfair to permit its withdrawal from the pretrial agreement.

### III

Accordingly, the petition for extraordinary relief is denied.

Judge COOK concurs.

FLETCHER, Judge (dissenting):

The petitioner offered to plead guilty in this case in accordance with a pretrial agreement signed by General Payne, the respondent convening authority's predecessor. Trial counsel notified the military judge that the respondent convening authority, General Richards, had withdrawn from this pretrial agreement prior to trial in accordance with paragraph 4–8i, AFM 111–1, *Military Justice Guide* (C4, May 13, 1980). The military judge held a hearing on this question and ruled that the respondent convening authority's withdrawal was proper. Defense counsel then made a motion to dismiss the charges and specifications against the petitioner because the Government, in withdrawing from this agreement, violated due process of law. The military judge denied this motion and the petitioner sought permission to petition this Court for extraordinary relief. All-Writs Act, 28 U.S.C. § 1651(a).

In his petition for extraordinary relief, the petitioner seeks an order from this Court directing the military judge or the convening authority to comply with this pretrial agreement or otherwise dismiss the charges and specifications pending against the petitioner. My Brothers opine in part that this petition can be entertained in the proper exercise of our extraordinary relief powers. I disagree. *Chenoweth v. Van Arsdall,* 22 U.S.C.M.A. 183, 46 C.M.R. 183 (1973).

The question raised in this petition is whether the military judge was correct in permitting the convening authority to withdraw from his predecessor's pretrial agreement with the petitioner. *See generally United States v. Kazena,* 11 M.J. 28 (C.M.A. 1981). There is no question in this case that the military judge had the authority to permit the convening authority to withdraw from this agreement. *Id.* at 31–32. An erroneous ruling by the military judge within this lawful exercise of authority is not alone sufficient to invoke the extraordinary relief powers of this Court. *See Dettinger v. United States,* 7 M.J. 216, 224 (C.M.A.1979) (Fletcher, C.J., concurring in the result).

The petitioner's pretrial agreement calls for limitations on the sentence which may be approved by the convening authority. It does not guarantee that he will not be tried for these offenses at court-martial. *Cf. Cooke v. Orser,* 12 M.J. 335 (C.M.A.1982). In view of these limitations on punishment (six months' confinement at hard labor) there is no necessity at the present time to exercise the extraordinary relief powers of this Court to preserve the possibility of granting the petitioner meaningful relief. *Cf. Collier v. United States,* 19 U.S.C.M.A. 511, 42 C.M.R. 113 (1970). In addition, there has been no showing by the petitioner that the military judge's ruling or the action of General Richards was taken to directly and palpably thwart the prospective jurisdiction of this Court. *Cf. Jones v. Ignatius,* 18 U.S.C.M.A. 7, 39 C.M.R. 7 (1968). Finally, as indicated by the majority opinion, it is not abundantly clear in this case that any verdict reached by this court-martial would be overturned. *Cf. Brookins v. Cullins,* 23 U.S.C.M.A. 216, 49 C.M.R. 5 (1974); *Fleiner v. Koch,* 19 U.S.C.M.A. 630 (1969); *Zamora v. Woodson,* 19 U.S.C.M.A. 403, 42 C.M.R. 5 (1970). Under these circumstances, I see no reason to permit a piecemeal appeal in the present case.

I do not believe Congress intended the All-Writs Act as a vehicle to supplant normal appellate review. *See Chenoweth v. Van Arsdall, supra.* I have repeatedly cautioned that the exercise of the Court's extraordinary relief powers in ordinary cases opens the floodgates for this Court to be swamped by petitions challenging every alleged error of law made by military judges. *See United States v. Redding,* 11 M.J. 100, 115 (C.M.A. 1981) (Fletcher, J., dissenting); *see also United States v. Caprio,* 12 M.J. 30, 33 (C.M.A.1981) (Fletcher, J., dissenting). Despite the exhortations of the majority to-

day, I feel constrained to repeat my warning.

In my opinion, the petitioner's offer to plead guilty made at trial and his objection to the respondent convening authority's withdrawal from this agreement preserve this issue for appeal. *See United States v. Kazena, supra.* This is true whether he subsequently decides to plead not guilty, plead guilty without an agreement, or plead guilty with a less advantageous agreement. The Government, not the petitioner, runs the risk that as a remedy for any improper conduct found to exist on its part, the Court may later invalidate that portion of the sentence in excess of the original pretrial agreement.

Accordingly, I would deny the petition for extraordinary relief without prejudice to the petitioner's raising the same question in the normal appellate review process or by a later petition for extraordinary relief where his prayer for relief is timely.