UNITED STATES, Appellee,

v.

Arthur N. BRAY, Jr., Master Sergeant,
U.S. Air Force, Appellant.

No. 97–0996.
Crim.App. No. 32346.

U.S. Court of Appeals for
the Armed Forces.

Argued May 13, 1998.

Decided Sept. 30, 1998.

For Appellant: *Major Ray T. Blank, Jr.* (argued); *Colonel Douglas H. Kohrt* and *Captain Tishlyn E. Taylor* (on brief).

For Appellee: *Captain Martin J. Hindel* (argued); *Colonel Brenda J. Hollis* and *Lieutenant Colonel Michael J. Breslin* (on brief).

---

*Opinion of the Court*

SULLIVAN, Judge:

In the early part of 1996, Master Sergeant Arthur Bray was tried by a general court-martial composed of a military judge sitting alone at Edwards Air Force Base, California. In accordance with his pleas, he was found guilty of assault and battery on a 5–year–old girl, kidnapping that child, committing an indecent act upon her, communicating a threat to her, and drunk driving, in violation of Articles 128, 134, and 111, Uniform Code of Military Justice, 10 USC §§ 928, 934, and 911, respectively. On May 23, 1996, he was sentenced to a dishonorable discharge, confinement for 37 years, total forfeitures, and reduction to the lowest enlisted grade. On August 29, 1996, the convening authority, pursuant to a pretrial agreement, approved the adjudged sentence except for confinement in excess of 30 years, which he disapproved. The Court of Criminal Appeals later affirmed in an unpublished opinion.

On January 12, 1998, this Court granted review of two issues raised in appellant's petition for grant of review and one issue raised pursuant to *United States v. Groste-*

*fon,* 12 MJ 431 (CMA 1982). We also specified an issue. They ask:

## I

WHETHER APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL DURING THE INITIAL PRESENTENCING SESSION OF TRIAL.

## II

WHETHER THE APPLICATION OF ARTICLES 57(a) AND 58b, UCMJ, VIOLATES THE *EX POST FACTO* CLAUSE OF THE UNITED STATES CONSTITUTION WITH RESPECT TO APPELLANT.

## III

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION IN REFUSING TO RECUSE HIMSELF FROM APPELLANT'S CASE.

### SPECIFIED ISSUE

WHETHER A CONVENING AUTHORITY MAY INCREASE THE CAP UNDER A PRETRIAL AGREEMENT WITHOUT GOOD CAUSE SHOWN WHEN THE ACCUSED WITHDRAWS A GUILTY PLEA AFTER THE SUCCESSFUL COMPLETION OF A PROVIDENCE INQUIRY AND SUBSEQUENTLY, IN THE SAME COURT–MARTIAL, REENTERS PLEAS OF GUILTY TO THE SAME CHARGES.

We hold that Issues I, III, and the Specified Issue must be resolved in the Government's favor and that Issue II requires us to return this case to the Judge Advocate General for corrective action.[1]

The Court of Criminal Appeals' opinion summarized the horrifying facts of appellant's kidnapping, sexual assault, and beating of a 5–year–old girl. It then proceeded to describe the events at appellant's trial which are the subject of this appeal.

Trial first began in early January, 1996. *Appellant had negotiated a 20 year cap on confinement* pursuant to an agreement to plead guilty. The Care (*United States v. Care,* 40 CMR 247 (CMA 1969)) inquiry, though complicated by appellant's claimed loss of memory, was adroitly handled by Judge Pope, and the matter proceeded to sentencing before a court panel consisting of officers and enlisted. It was then that the proceeding derailed over the proposed "mitigation" testimony, brought on by appellant's civilian counsel, of a psychiatric social worker. Undismayed by a lack of education, training, or credentials in the realm of toxicology or psychiatry, Cynthia Stout, in response to a direct question from the military judge, opined that it was possible that appellant was not responsible for his actions because of having sprayed insecticide at some unspecified earlier period of time, thus precipitating, she ventured, a psychotic reaction akin to a similar one he had experienced in 1987.

Appellant had already undergone a mental responsibility board, and had been declared fit for trial and mentally responsible at the time of the offenses. Faced with this testimony, however, Judge Pope alertly halted the proceedings, advising appellant that the possibility of a mental responsibility defense had been raised to the extent as to bring into question the providence of appellant's pleas. He recessed the court to enable appellant to consult with his lawyers as to what to do next. *Following the recess, appellant informed the judge that he had decided to withdraw his pleas of guilty.*

It turned out that this move finalized a growing rift between appellant's individual military counsel and his civilian lawyer. Military counsel and (sic) experienced circuit defense counsel, had already investigated the insecticide defense, and knew that it potentially opened the door to dev-

---

1. Judge Sullivan would remand this case to the Court of Criminal Appeals. *See United States v. Gorski,* 47 MJ 370, 376 (1997)(Sullivan, J., concurring in part and in the result); *see also United States v. Roseboro,* No. 98–0439, —— MJ —— (July 27, 1998) (Sullivan, J., dissenting); *United States v. Keeney,* 49 MJ 388, 389 (1998) (Sullivan, J., concurring in part and dissenting in part).

astating rebuttal evidence. The prosecution had solid evidence that appellant had repeatedly assaulted, sodomized, and raped his younger sister from the time she was a young girl. It had other, less conclusive, indications that appellant had a lengthy and troubled history of sexual interest in, and abuse of, pre-adolescents, including an inappropriate approach to VG in 1994. Trial was rescheduled for early March 1996.

The March date fell through, however, as civilian counsel announced himself unprepared and with a conflicting trial calendar in state court, the case was re-set and finally tried on May 22–23, 1996. Having abandoned once and for all the insecticide psychosis defense, *appellant once again pled guilty pursuant to a pretrial agreement, but the cap this time was for 30 years.*

Unpub. op. at 2–3 (emphasis added).

As noted above, appellant was eventually sentenced to 37 years' confinement. The convening authority approved 30 years' confinement in accordance with the second pretrial agreement. This was 10 years more confinement than could have been approved under the first pretrial agreement.

## I

The first granted issue asks whether appellant was denied effective assistance of counsel when his civilian defense counsel failed to adequately research and investigate possible defenses which might cause his initial pleas of guilty to be rejected. Appellant, relying on his own posttrial affidavit and that of his previously relieved military counsel, broadly criticized civilian defense counsel's performance. In particular, however, he claims that "civilian counsel's *failure to properly investigate a potential defense* [insecticide poisoning defense], before presenting evidence that was ultimately discarded and disclaimed, *caused appellant to lose the benefit of his pretrial agreement* after he had entered into a stipulation of fact and entered provident pleas that were accepted by the military judge." (Emphasis added). The bottom line is that appellant may serve 10 years more confinement under his second pretrial agreement.

As a starting point, we note that appellant has not proffered to this Court or the court below an affidavit from civilian defense counsel explaining his conduct in this case. Moreover, he has not asserted that civilian defense counsel refused to provide an affidavit on this question; nor does he argue that the lower appellate court erred in not ordering such an affidavit on its own before resolving this case. Nevertheless, we note that the record contains civilian defense counsel's explanation for his actions, and it is a sufficient basis to reject appellant's claim of ineffective assistance of counsel under the Supreme Court's and our precedent. *See generally Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Scott,* 24 MJ 186 (1987) (unreasonable attorney conduct and prejudice).

Our first concern then is whether it was ineffective assistance for civilian defense counsel to attempt to call Doctor Stout to the stand during the sentence proceedings in this case. RCM 1001(c), Manual for Courts-Martial, United States (1995 ed.) authorizes defense counsel to introduce matters to the sentencing authority which might lessen the adjudged sentence, *i.e.,* "matters in extenuation and mitigation." "Matter in extenuation of an offense serves to explain the circumstances surrounding the commission of an offense, including those reasons for committing the offense which do not constitute a legal justification or excuse." Matter in mitigation is otherwise offered to lessen the punishment. Here, defense counsel wanted to call Doctor Stout, a doctor of philosophy and psychology, as a "mitigation" witness who might provide some explanation for appellant's shocking conduct.

The defense theory of "mitigation" was explained by defense counsel as follows:

CIV DC: In 1987, there was a finding of insecticide poisoning and psychosis. She is going to make a professional correlation to that. She is going to make a correlation that the events that she has read, as far as the statement of facts and the reports in this matter, point to another psychosis. With the information that she has, *it could*

*have quite possibly been another episode proceeding [sic] that insecticide poisoning.*

\* \* \*

CIV DC: She can't say what component in 1987 poisoned him, within the realm of insecticide poisoning. She also in this event—you know, *we have facts that he was exposed immediately proceeding [sic] this evidence to insecticides and ingested them, and there is a psychotic reaction.* That's it. To say that an organic phosphate, or whatever counsel used, some particular reagent—excuse me, chemical identity to that, it is not within the '87 records.

And that testing was done in this event. So, we have two single episodes, isolated psychotic events, both—one proceeded [sic] by a documented event of insecticide poisoning, although we don't know what the compound was; and a second one proceeded [sic] by an event of insecticide exposure. . . .

This was relevant defense sentencing evidence, and its presentation, even without further research and investigation, was not ineffective assistance of counsel. *See United States v. Curtis,* 46 MJ 129, 130 (1997); *see* RCM 916(*l*)(2) Discussion (although voluntary intoxication is not a defense, evidence of voluntary intoxication may be admitted in extenuation).

Nevertheless, appellant complains that his civilian defense counsel should have realized that this "bug spray" defense testimony of Doctor Stout would invalidate his previously entered guilty pleas. He asserts that the relieved military defense counsel advised civilian defense counsel of this problem. Civilian defense counsel clearly did not consider this evidence as capable of invalidating the plea and repeatedly informed the military judge that the testimony of Ms. Stout was proferred only as sentence mitigation evidence. It was the trial judge who subsequently ruled that this evidence raised a possible legal defense to the offenses to which appellant previously pleaded guilty. Only then did civilian defense counsel consid-er this evidence as a possible basis for withdrawing the previously entered guilty pleas.

■ Thus, the critical question becomes whether civilian defense counsel provided ineffective assistance of counsel by failing to anticipate the trial judge's action. We think not. A sanity board had been previously conducted, which concluded appellant was mentally capable of committing the charged offenses, and defense counsel knew that fact. In addition, civilian defense counsel had requested government funding for a psychiatric forensic expert to explore Doctor Stout's rejected testimony, which was denied by this same trial judge. Finally, it is well established that intoxication evidence, not rising to the level of a defense or showing a lack of mental responsibility, does not invalidate a guilty plea. *See* RCM 916(*l*)(2), Discussion and *United States v. Curtis,* 46 MJ 129 (1997); *see generally United States v. Hensler,* 44 MJ 184 (1996)(involuntary intoxication treated like legal insanity). Civilian defense counsel's failure to anticipate the military judge's ruling was not unreasonable.

■ The next question we must address is whether it was ineffective assistance of counsel to advise appellant to withdraw his guilty plea and risk losing the 20–year sentence cap. *See Brown v. Doe,* 2 F.3d 1236, 1246 (2d Cir.1993)(an accused entitled to reasonable professional assistance during the plea bargaining stage). The record provides the following explanation for defense counsel's action in this record:

DC [Military counsel]: Sir, based on the research that we performed, and I do want to elaborate just for the record for Sergeant Bray's benefit, back in November, December, before I was on the case, while reviewing document (sic), Mr. Bernstein requested at least a couple of times through the legal office and through the convening authority that certain testing be done to examine whether or not this psychotic episode of insecticide poisoning that Doctor Stout testified to had been done. Through whatever reasons, whether or not the legal office felt it wasn't justified—I think I know in one area, it was just almost in spite because it wasn't in a prop-

er format, those were denied. Doctor Stout was funded through Master Sergeant Bray. She reviewed the records. She did not interview Master Sergeant Bray, but just reviewed the records when she came in here to testify back in January regarding what could have happened. And that is basically what it amounted to; what maybe could have happened.

*However, at that point, the defense did not have the testing that we felt was necessary. Since that point of when Sergeant Bray withdrew his plea, through the court's help and actually through Captain Cothrel's help, we have had access to Doctor Stout through government funding.*

Doctor Lebegue, who we have consulted with in this case. I've talked with a few of the government's experts, talked with an expert in chemicals, the department of agriculture—I mean, we have now, we believe exhausted through the tools, albeit maybe minimum tools that we have received, but have gone out and examined whether or not what Doctor Stout was testifying to actually occurred and whether that did cause some type of mental defect that rises to the level of a defense.

*Based on talking to now five or six experts in the field, we feel that the medical literature, the psychological literature, and talking with those experts, that there is not a defense based on a combination of all the factors.*

*But that is what kind of led up until the withdrawing of the guilty plea to begin with, to allow us a chance to look at that.* At this point, we feel we have had sufficient resources and opportunity to look into that. We feel that there is not a defense.

Concern that a valid guilty plea be entered by a military accused does not equate to ineffective assistance of counsel. *See* RCM 910(e) and 502(d)(6), Discussion (defense counsel should try to obtain complete knowledge of facts of case before advising the accused, and should give the accused a candid opinion of the merits of the case). Moreover, at that time, appellant's choice was between a possible defense and no sentence, and a guilty plea and a 20–year sentence. It

was not unreasonable for defense counsel to believe that the convening authority would continue to keep his previous offer open or opt for a more comprehensive evaluation of the evidence in this case. *See United States v. Briggs,* 42 MJ 367, 371–72 (1995)(eliminate hindsight in evaluating effective assistance of counsel). Misjudging the new convening authority's position on this matter does not constitute ineffective assistance of counsel. *See Judge v. State,* 321 S.C. 554, 471 S.E.2d 146, 150 (1996) (misjudgment alone not ineffective assistance of counsel).

Appellant's final brief also implies that he only withdrew his guilty pleas because he was compelled to do so by the ineffective advice of his civilian defense counsel. As noted above, defense counsel did not provide ineffective assistance of counsel on this matter. In addition, appellant was a 41–year–old Master Sergeant with 21 years of military experience. In his own affidavit, he admits the ultimate decision was his. He stated, "When the judge said this might be a defense, and Mr. Bernstein explained what the judge said about being able to accept my plea and the possibility that I may have had a defense, I agreed to go along with his recommendation to withdraw my guilty pleas. Even though I had been in pretrial confinement since 4 June 1995, *I thought it was important that my counsel investigate whether I had a defense before I went through with the pleas of guilty."* Appellant's own assessment of his self-interest cannot be ignored.

Appellant's final complaint, again implied, is that the withdrawal of his guilty pleas unexpectedly resulted in the canceling of his then-existing pretrial agreement with the convening authority. However, paragraph 8 of this January 5, 1996, agreement states: "I understand that I may withdraw my pleas of guilty at anytime before, but not after sentence is announced. I also understand that if I withdraw my pleas of guilty, this agreement is canceled and of no effect." Moreover, prior to withdrawal of his guilty pleas, he expressly reaffirmed to the military judge that this was his understanding of how the

pretrial agreement operated. Finally, he did not object to the canceling of the earlier pretrial agreement and the substitution of a new agreement with a new cap of 30 years. There is no suggestion of surprise or involuntariness in this record.

## II

▪ The second issue granted review in this case is raised under the *Ex Post Facto* Clause of the Constitution. All of appellant's offenses were found to have occurred in 1995. Appellate defense counsels' brief asserts:

The appellant was sentenced on 23 May 1996. He was punished with a dishonorable discharge, confinement for 30 years, forfeiture of all pay and allowances, and reduction to the grade of airman basic. Under the law in effect when he committed his offenses, the appellant would have received his full pay as a master sergeant from the date of trial until the convening authority approved the sentence on 29 August 1996. Furthermore, under the old law, the appellant would have remained as a Master Sergeant until 29 August 1996, when the convening authority approved his reduction to airman basic.

In accord with the majority opinion in *United States v. Gorski*, 47 MJ 370 (1997), the record of trial in this case will be returned to the Judge Advocate General of the Air Force for appropriate action. *See United States v. Hardsaw*, 49 MJ 256, 259 n. 2 (1998).[2]

## III

▪ The third question before us is whether the military judge erred in refusing to recuse himself in appellant's case. *See generally* RCM 902. Appellant points to his recusal motion at trial and argues that the military judge abused his discretion in refusing to grant it. He asserts that the military judge had previously heard appellant's responses to a providence inquiry on the charged offenses; he had reviewed a stipulation of fact concerning them; and he had entered findings of guilty pursuant to appel-

lant's initial pleas of guilty. He further notes that the trial judge had heard a defense mitigation witness and compelled appellant to withdraw his earlier pleas of guilty on this basis. Finally, he states, "[t]he military judge apparently had several conversations with several people" "near members" to the effect that the prosecutor should be able to argue for a life's sentence in appellant's case "with a straight face."

▪ We initially note that the military judge was not *per se* disqualified from sitting in this case as a result of his prior involvement in appellant's rejected pleas of guilty. Then–Judge Cox, writing in *United States v. Winter*, 35 MJ 93, 95 (CMA 1992), made this point crystal clear:

However, "generally there is no restriction on the military judge alone" trying a case where the judge has found guilty pleas improvident. *United States v. Hodges*, 22 USCMA 506, 507, 47 CMR 923, 924 (1973). There is no *per se* rule that military judges are disqualified whenever, after accepting guilty pleas, they must later reject those pleas based on unforeseen circumstances. Even more so, there is no invariable requirement that judges *sua sponte* recuse themselves in all such cases. *United States v. Hodges, supra; United States v. Kauffman*, 3 MJ 794 (ACMR 1977). *See also United States v. Thomas*, 7 MJ 299 (CMA 1979); *cf. United States v. Collins*, 6 MJ 256 (CMA 1979).

We acknowledge, however, that even though a judge is not *per se* disqualified from presiding over a bench trial after rejecting guilty pleas, the facts of a particular case may still require recusal of the military judge, especially if the judge has formed an intractable opinion as to the guilt of the accused. *Cf. United States v. Bradley*, 7 MJ 332 (CMA 1979). Fundamental legal principles require judges to decide cases based on evidence presented at trial.

(Footnotes omitted.) Furthermore, the military judge's statements on this record make

2. *See* n. 1, *supra*.

clear that he had no intractable opinion regarding appellant's guilt or sentence.

Nevertheless, appellant cites RCM 902(d) and further argues that "a reasonable person who knew the facts of this case would question the appearance of impurity and have doubts as to the military judge's impartiality." Final Brief at 21. He particularly focuses on allegations that the military judge expressed his opinion prior to or during his court-martial that he deserved a life sentence. We disagree and conclude that the military judge did not abuse his discretion in rejecting this challenge for cause against him. *See generally United States v. Sanchez*, 37 MJ 426, 427 (CMA 1993); *United States v. Elzy*, 25 MJ 416 (CMA 1988).

In this regard, we note that the military judge forthrightly confronted the challenge against him in this case and conducted a full hearing on this matter. He subjected himself to *voir dire* on any matter about which the parties might wish to inquire and eventually offered his own statement concerning his prior knowledge of appellant's case. He specifically responded to the life-sentence question as follows:

> I probably have expressed an opinion about this case, but I probably expressed it to you people. I was unhappy with the lack of progress on some of my rulings and I have expressed this is a serious case, that your client is in *pretrial* confinement and the Government needs to move out smartly.
>
> I think most people would agree that this is a serious case. Other than that, I don't think I have expressed any opinion one way or the other as to what an appropriate sentence would be. *I think I have stated, as counsel has stated to me, the accused is facing life in this case, which makes it a serious case.* That is the maximum, but I think every judge is going to be aware of what the maximum penalty is available in this case.
>
> I am not aware of anything else that I have said about this case. My expressed opinions have been mainly to the parties as we have dealt with these various issues about getting the medical tests done in a timely manner and dealing with other issues.

In these obviously benign circumstances, we conclude that the military judge did not abuse his discretion in refusing to recuse himself from sitting at this court-martial.

## IV

The final question before us is whether appellant was unfairly exposed to a 30-year sentencing cap after the military judge rejected his pleas of guilty to basically the same offenses with a 20-year cap. Appellant generally argues that "principles of fairness and due process compel the Government to abide by a pretrial agreement on which an accused has reasonably relied to his detriment. *Shepardson v. Roberts*, 14 MJ 354, 358 (CMA 1983)." More specifically, he asserts:

> Although MSG Bray, through counsel, withdrew his pleas, he never formally entered a plea of not guilty, and never failed to abide by the other terms of the pretrial agreement. Under the circumstances of his case, he should be entitled to specific performance of the initial pretrial agreement. He began performance of his promises and did everything within his power to assure fulfillment of the initial pretrial agreement. *Cf. United States v. Penister*, 25 MJ 148 (CMA 1987). The withdrawal of the plea was not a "failure of the accused." *Id.* at 153.

The Court of Criminal Appeals commented on the renegotiated sentence cap as follows:

> Couched in terms of sentence severity, appellant's real complaint is that the Government upped the ante on his pretrial agreement even though the severity of the crimes had not changed. The judge thoroughly explored with appellant the repercussions of appellant's election to withdraw his plea, including the fact that it relieved the convening authority of his obligations under the original pretrial agreement. The convening authority was at liberty to do as he did—strike a harder bargain the second time around. By the same token, appellant was also free to decline to enter into a pretrial agreement and to litigate.

While we have no doubt that appellant looks back on his original deal wistfully, he finds himself where he is as a result of informed, counseled choices he made, and for which he alone is responsible.

Unpub. op. at 3. We agree.

■ RCM 705(d)(4) permits either an accused or a convening authority to withdraw from a pretrial agreement. The power of a convening authority to withdraw is more limited than that of an accused.[3] RCM 705(d)(4)(B) states:

> (B) *By convening authority.* The convening authority may withdraw from a pretrial agreement at any time before the accused begins performance of promises contained in the agreement, upon the failure by the accused to fulfill any material promise or condition in the agreement, when inquiry by the military judge discloses a disagreement as to a material term in the agreement, or if findings are set aside because a plea of guilty entered pursuant to the agreement is held improvident on appellate review.

This is not law unique to the military. *See* American Bar Association, *Standard for Criminal Justice* 3–4.2(c). Finally, having properly withdrawn from a pretrial agreement, a convening authority can enter a new agreement with a higher sentence limitation than in the original agreement. *See United States v. Penister,* 25 MJ 148, 153 (CMA 1987).

Here, appellant elected not to take advantage of the trial judge's offer to reopen the providence inquiry to address the "bug spray" defense issue. Instead, after consultation with counsel, he chose to withdraw his pleas and, by that act, cancel his pretrial agreement with its 20–year sentence cap. Finally, as noted above, the consequences of withdrawing his guilty pleas were expressly stated in the original agreement, explained to him by the judge as part of the initial providency inquiry, and explained to him again during the withdrawal inquiry.

We perceive no fundamental unfairness or inequity in these circumstances which would reasonably justify relieving appellant of his own voluntary decisions. *See generally Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). A criminal accused may face many difficult choices in the criminal justice system, but that does not render that process constitutionally unfair. *See Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). Moreover, any claim of unfair prejudice is severely undermined by his failure to voice any concern at trial. *See* RCM 906. Finally, appellant has not shown that he relied to his detriment on the first agreement, and he received a substantial 7–year sentence reduction under the second agreement. *See Shepardson, supra* at 358.

V

The decision of the United States Air Force Court of Criminal Appeals is affirmed as to result only. Execution of the forfeitures and reduction prior to the date of the convening authority's action is hereby declared to be without legal effect. Any forfeitures collected prior to that date, and any pay and allowances withheld because of the premature reduction in grade, will be restored. The record of trial is returned to the Judge Advocate General of the Air Force for appropriate action.

Chief Judge COX, Judge GIERKE, and Senior Judge EVERETT concur.

CRAWFORD, Judge (dissenting in part and concurring in the result):

Generally, the prosecution may withdraw from a pretrial agreement at any time prior to the entry of the guilty plea, unless there has been "detrimental reliance," such as giving up one's Fifth Amendment right. *Shepardson v. Roberts,* 14 MJ 354, 358 (CMA 1983). I agree with the majority to affirm

---

**3.** (4) *Withdrawal.*

  (A) *By accused.* The accused may withdraw from a pretrial agreement at any time; however, the accused may withdraw a plea of guilty or a

confessional stipulation entered pursuant to a pretrial agreement only as provided in RCM 910(h) or 811(d), respectively.

the decision of the United States Air Force Court of Criminal Appeals. However, I reach this conclusion on the basis of appellant's conduct during the 5–month continuance, and not upon detrimental reliance. During that period, the defense consulted a number of experts throughout the United States in determining whether a defense was available. Based on this consultation, they consciously concluded there was no defense in this case.

The bench and bar should not read too much into the majority opinion, since the "voice any concern" (read failure-to-object) language, 49 MJ at 308, seems to suggest a proposition rejected in *Mabry v. Johnson,* 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984). The Supreme Court in *Mabry* unanimously rejected the proposition that " 'fairness' preclude[s] the prosecution's withdrawal of a plea proposal once accepted by [a] respondent." *Id.* at 506, 104 S.Ct. 2543.