UNITED STATES, Appellee,

v.

Joey VILLAREAL, Aviation Ordnanceman Airman, U.S. Navy, Appellant.

No. 98–0200.
Crim.App. No. 96–1234.

U.S. Court of Appeals for the Armed Forces.

Argued Jan. 12, 1999.

Decided Sept. 28, 1999.

**28**

COX, C.J., delivered the opinion of the Court, in which CRAWFORD and GIERKE, JJ., joined. SULLIVAN and EFFRON, JJ., each filed a dissenting opinion.

For Appellant: *Lieutenant Dale O. Harris*, JAGC, USNR (argued).

For Appellee: *Lieutenant Commander JoAnn W. Melesky*, JAGC, USN (argued); *Commander E.E. Irvin*, JAGC, USN, *Colonel K.M. Sandkuhler*, USMC, and *Lieutenant James E. Grimes*, JAGC, USNR (on brief); *Colonel Charles Wm. Dorman*, USMC, and *Lieutenant Commander Christian L. Reismeier*, JAGC, USN.

Chief Judge COX delivered the opinion of the Court.

Appellant was convicted of one specification each of violating a lawful general order by bringing a firearm onto a naval installation, involuntary manslaughter, negligent discharge of a firearm, obstructing justice, solicitation to obstruct justice, and carrying a concealed weapon, in violation of Articles 92, 119, and 134, Uniform Code of Military Justice, 10 USC §§ 892, 919, and 934, respectively. The court members sentenced appellant "[t]o forfeit $400.00 pay per month for 10 years; to be reduced to E–1; to be confined for 10 years; [and] to be discharged from the service with a dishonorable discharge."

Appellant raised two issues in his appeal, and we specified an additional issue.[1] First, he questions whether the military judge erred in denying his pretrial motion to dismiss the charges due to unlawful command influence. Second, he alleges that a specifi-

1. The issues are:

I
WHETHER THE MILITARY JUDGE ERRED IN DENYING APPELLANT'S MOTIONS EITHER TO DISMISS WHERE UNLAWFUL COMMAND INFLUENCE RESULTED IN APPELLANT'S PRETRIAL AGREEMENT BEING WITHDRAWN, OR TO ABATE THE PROCEEDINGS UNTIL THE SUBSTITUTE CONVENING AUTHORITY COMPLIED WITH THE TERMS OF THE PRETRIAL AGREEMENT AS APPROVED BY THE ORIGINAL CONVENING AUTHORITY.
II
WHETHER THE MILITARY JUDGE ERRED IN INSTRUCTING THE MEMBERS THEY COULD CONVICT APPELLANT OF BOTH OBSTRUCTION OF JUSTICE AND THE LESSER–INCLUDED OFFENSE OF SOLICITATION TO OBSTRUCT JUSTICE.
Specified
WHETHER THE RECORD OF TRIAL IS INCOMPLETE, IN LIGHT OF THE ABSENCE FROM THE RECORD OF TRIAL OF THE MILITARY JUDGE'S FINDINGS OF FACT REGARDING THE DEFENSE MOTION TO DISMISS ON THE GROUND OF UNLAWFUL COMMAND INFLUENCE, *SEE* RCM 1103(b)(3)(A)(iv).

cation for obstruction of justice is multiplicious with another specification for solicitation to obstruct justice. In addition, we raised the question whether the record was incomplete, in light of the fact that the military judge's findings of fact denying the defense motion to dismiss on the ground of unlawful command influence were not included in the record of trial.

### FACTS

At the beginning stages of his trial, appellant negotiated and entered into a pretrial agreement with the original convening authority in his case, the Commanding Officer, Naval Air Station, Whidbey Island, Washington—Captain Schork.

After the pretrial agreement was signed by all parties, but prior to pleas at trial, the convening authority unilaterally decided to withdraw from the terms of the pretrial agreement. According to testimony taken during the pretrial motion, and to the military judge's findings of fact, the reason the convening authority decided to withdraw from the agreement was because of increasing pressure by the victim's family members, who were vehemently opposed to entering into a pretrial agreement that allowed appellant to plead to manslaughter instead of murder.[2]

As a result of this pressure, the convening authority sought advice by telephoning his "old friend and shipmate," who happened to be the acting superior convening authority for this case.[3] This superior convening authority, Captain Eckart, stated words to the effect of "what would it hurt to send the issue to trial," in response to Captain

Schork's concerns about maintaining the original pretrial agreement.

After this conversation, and against the advice of his staff judge advocate, Captain Schork withdrew from the pretrial agreement. Following this withdrawal, the case was transferred to a third, and completely separate convening authority—Commander, Naval Base Seattle.

During the pretrial motions stage of the trial, the defense moved unsuccessfully to dismiss all charges, or in the alternative, for specific performance of the pretrial agreement from which the original convening authority had withdrawn. Appellant's petition for extraordinary relief, on the same grounds, was denied by the Court of Criminal Appeals in an unpublished opinion dated September 27, 1995.

On November 20, 1995, we denied appellant's writ-appeal petition for review of a version of the first granted issue, and on January 25, 1996, we denied a motion for reconsideration of that decision. *See* 43 MJ 476 (1996). Appellant asked us to consider whether unlawful command influence caused the revocation of his signed pretrial agreement. We did not reach the merits of appellant's contentions, instead deciding that this issue was a matter to be reviewed during the course of ordinary appellate review. Specifically, we stated: "If warranted, the convening authority, the Court of Criminal Appeals, or this Court can grant appellant relief, regardless of his pleas to the charges and specifications, during the ordinary course of appellate review." *Id.* at 476.

---

**2.** The original pretrial agreement provided that appellant would plead guilty to some of the charged offenses, including a plea for involuntary manslaughter (Art. 119, UCMJ, 10 USC § 919) instead of murder (Art. 118, UCMJ, 10 USC § 918). In return, the convening authority agreed to limit appellant's confinement to 5 years and his forfeitures to ½ of his pay per month for a period of 60 months from the date of court-martial. Appellant would obviously have benefited from this agreement, because although he was also convicted of the lesser offense of manslaughter vice murder, he was convicted of various other offenses for which the agreement would have allowed him to be found not guilty. Moreover, the original pretrial agreement would

have limited appellant's confinement to 5 years, and his court-martial adjudged 10 years. The Court of Criminal Appeals reviewed appellant's sentence and reduced his confinement period to 7½ years. Thus, appellant is serving 2½ more years confinement than he would have under the original pretrial agreement.

**3.** The superior command was Commander, Naval Air Forces Pacific, commonly referred to as AIRPAC. Captain Eckart was the Chief of Staff to the Commander of AIRPAC, Admiral Spane. On the day of the telephone call, Admiral Spane was out of town; therefore, Captain Eckart was acting as the convening authority.

We have now considered this claim, the other granted issue, and the specified issue. We find, first, that appellant did not suffer prejudice to his substantial rights because the forwarding of the charges to a new general court-martial convening authority, after any perceived taint arose, cured any appearance of unlawful command influence. *See* Art. 59(a), UCMJ, 10 USC § 859(a). Second, the military judge ruled that the challenged offenses were multiplicious for sentencing; hence, appellant was not materially prejudiced by his failure to raise this issue at trial. Finally, appellant was not prejudiced by the absence from the record of the military judge's specific findings on the motion because appellant was in possession of them and was on notice as to what those findings were. Accordingly, we affirm the decision of the court below.

## DISCUSSION

### ISSUE I

An allegation of unlawful command influence is reviewed *de novo*. *United States v. Wallace*, 39 MJ 284, 286 (CMA 1994). If any findings of fact have been made in conjunction with ruling upon a motion regarding unlawful command influence, these findings are reviewed under a clearly erroneous standard. *Id.* Here, the military judge made detailed findings of fact, and these findings are clearly supported by the record. We accept them for our *de novo* analysis.

In this case, the convening authority revoked his approval of a pretrial agreement, after all parties had signed it but before appellant exercised any reliance thereon. The military judge decided that this action, while not the result of unlawful command influence, gave the appearance of unlawful command influence. Thus, in the military judge's view, the telephone call, even though not initiated by the original convening authority's superior, nevertheless might give a member of the general public the perception that military justice yields fixed results.

In *United States v. Gerlich*, 45 MJ 309 (1996), we addressed the issue whether a letter from the convening authority's superi-

or suggesting that the convening authority set aside an Article 15 [4] punishment in order to refer the case to court-martial resulted in unlawful command influence. *Id.* at 312. In that case, the original convening authority testified that his superior's letter only caused him to reexamine his position. *Id.* at 313. We observed that a subordinate officer is in a tenuous position when it comes to evaluating the effects of unlawful command influence being exerted on him or her. *Id.* Therefore, we concluded that the Government did not meet its burden of proof in dispelling at least the appearance of unlawful command influence, and because no curative action had been taken, we reversed. *Id.* at 313–14; see also *United States v. Levite*, 25 MJ 334 (CMA 1987). Unlike *Gerlich*, here the subordinate convening authority initiated the contact with his friend. We do not view this as unlawful command influence. RCM 104, Manual for Courts–Martial, United States (1995 ed.); Art. 37, UCMJ, 10 USC § 837. In any event, even if the telephone call created an appearance of unlawful command influence, a conclusion we need not reach here, it was cured by the transfer of the case to a new convening authority for separate consideration and action.

Appellant claims that even if there was no unlawful command influence, he was materially prejudiced by the revocation of the pretrial agreement, and thus he should be entitled to its specific performance. *See generally* RCM 705. We recognize that appellant's subsequent sentence to 10 years' confinement was more severe than the 5 years he would have received under the original pretrial agreement. However, while appellant certainly was placed in a different position by the convening authority's decision to withdraw from the agreement, this is not the type of legal prejudice that would entitle appellant to relief.

An accused does not have a constitutionally guaranteed right to plead guilty. *See Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). However, under certain circumstances, specific performance of a preexisting pretrial

4. UCMJ, 10 USC § 815.

agreement will be ordered when an accused has relied upon the agreement and performed some affirmative act or omission equating to detrimental reliance. *See United States v. Penister,* 25 MJ 148, 152 (CMA 1987) (findings and sentence set aside when Government withdrew from pretrial agreement after trial counsel encouraged military judge to find accused's pleas improvident); *Shepardson v. Roberts,* 14 MJ 354, 358 (CMA 1983) (Government is compelled to abide by a pretrial agreement upon which an accused has detrimentally relied).

■ Such a situation does not exist in this case. Here, appellant knew of the withdrawal from the pretrial agreement before he had an opportunity to rely on it in any manner that would legally prejudice his right to a fair trial. *See* RCM 705(d)(4)(B) ("The convening authority may withdraw from a pretrial agreement at any time before the accused begins performance of promises contained in the agreement[.]"). No pleas of guilty were entered in reliance on the agreement's mitigating action. In fact, appellant entered pleas of not guilty to all charges. Appellant had the choice of entering pleas of guilty to some or all of the charges, and may have received mitigating action from the court-martial, and perhaps the convening authority, had he done so. *See* Art. 45, UCMJ, 10 USC § 845; RCM 1001(f)(1); *see also Shepardson,* 14 MJ at 357. While there was no guarantee either way as to what would happen without the pretrial agreement, appellant was not legally entitled to such a guarantee under the circumstances of this case.

Certainly, when a convening authority unilaterally pulls out of an agreement such as this one, it may not bode well for his or her ability to enter into future agreements that might save the command both time and money. However, in the military justice system, discretion to plea bargain is a policy and leadership decision; it is not a legal decision subject to the remedies that this Court offers.

Here, the transfer of this case to an impartial convening authority cured any appearance of unlawful command influence. Because this remedy was afforded to appellant

in a timely manner—prior to his trial—there is no further relief to be granted.

## Issue II

■ For the first time on appeal, appellant claims that his convictions for solicitation of obstruction of justice and obstruction of justice are multiplicious for findings. At trial, the military judge properly submitted both charges to the members to allow for contingencies of proof by the prosecution. When the members convicted of both charges, the military judge granted a defense motion to find these two charges multiplicious for sentencing purposes. While defense counsel could have properly made a motion to have the two offenses considered multiplicious for any purpose, this motion was not made. We have held that the failure to raise such a motion at trial waives the issue, absent plain error. *See United States v. Britton,* 47 MJ 195, 198 (1997); *United States v. Carroll,* 43 MJ 487, 488 (1996).

■ Here, plain error cannot be found. The military judge properly instructed the members that the two offences were to be considered as one for their sentencing determinations. There is no indication that the members did otherwise. Moreover, it is not plain on its face that these two offenses would have been multiplicious for findings. *See id.* at 489 (solicitation and conspiracy held to be separate offenses). The same reasoning might well apply to solicitation to obstruct justice and the subsequent obstruction of justice, if the completed crime requires the agreement of two or more parties, as it did here. Under these circumstances, there is no plain error.

## Specified Issue

■ The specified issue is resolved against appellant. Appellant acknowledges that the failure to include in the record of trial the military judge's special findings on the command influence motion did not prejudice him at the lower court. However, appellant contends that failure to include these findings in the record of trial nevertheless prejudiced him because the staff judge advocate did not have the opportunity to comment

on whether clemency or other corrective action was warranted because of the appearance of command influence. The staff judge advocate must have been aware of appellant's command influence argument and the judge's findings from the record of trial alone. This verbatim record was not misleading or so incomplete as to prevent meaningful review regarding litigation of the command influence motion. Here, appellant has not been substantially prejudiced by its absence from the record of trial. *See* Art. 59(a).

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

### SULLIVAN, Judge (dissenting):

I have written previously in this case and adhere to those views. *See Villareal v. Ramsay,* 43 MJ 476 (1996) (Sullivan, J., dissenting); *see generally United States v. Hagen,* 25 MJ 78, 87–88 (CMA 1987) (Sullivan, J., concurring). I must add a few additional comments in light of the majority opinion in this case.

Article 37(a), Uniform Code of Military Justice, 10 USC § 837(a), states: "No person subject to this chapter may attempt to coerce or, by any unauthorized means, influence . . . the action of any convening . . . authority with respect to his judicial acts." There is no "old friend and shipmate" exception to this rule, nor an exception for the convening authority who first initiates the discussion with the superior concerning the case. I agree with Judge Effron that *United States v. Gerlich,* 45 MJ 309 (1996), controls. As I stated before: "From the state of the record before us, it appears that a higher headquarters may have improperly influenced a convening authority to withdraw from a [pretrial agreement]." 43 MJ at 477.

As for prejudice, at the very least, appellant is liable for 2½ more years of confinement. Transferring this case to a new convening authority, after appellant has unlawfully been denied the benefit of his bargain, does not erase this stark reality. Moreover, the majority's trumpeting of the command's right to enter plea bargains as somehow justifying this additional punishment is unconvincing. This right is not absolute, and it must give way to the overarching concerns of due process of law. *See* Art. 37.

In sum, the rule of law, not clandestine command policy, controls our military justice system. U.S. Const., art. I, § 8, cl. 14; Art. 37; *see also Weiss v. United States,* 510 U.S. 163, 181, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994) (that court has demonstrated its vigilance in checking any attempts to exert improper influence over military judges). The facts of this case, in my view, suggest the contrary. Accordingly, I dissent.

### EFFRON, Judge (dissenting):

When an accused alleging unlawful command influence meets his burden of production by presenting evidence that reflects an appearance of unlawful command influence, the burden shifts to the Government to prove either that there was no unlawful command influence or that, even if there was unlawful command influence, there was no prejudice to the accused. *See United States v. Gerlich,* 45 MJ 309, 310 (1996). In this case, the military judge found that "[t]here was, at least, the appearance of improper command influence when CAPT Schork withdrew from the [pretrial agreement] after the conversation with Acting AIRPAC [CAPT Eckart], and against the advice of his [staff judge advocate]," but concluded that she was powerless to provide an appropriate remedy.

The majority attempts to distinguish the present case from *Gerlich* on the grounds that in *Gerlich,* the superior officer initiated the alleged improper contact. This distinction is insignificant. In military life, subordinates regularly contact their superiors on a wide variety of matters. If such contacts provided superior officers with an unrestricted opportunity to engage in unlawful command influence, Article 37, UCMJ, 10 USC § 837, would provide little protection to either subordinates or accused servicemembers. The majority also notes that CAPT Schork and CAPT Eckart were old friends. It is quite common in military life for professional associations and shared hardships to ripen into deep friendships. Members of the

armed forces frequently must put aside such friendships on a wide variety of matters, ranging from the preparation of personnel ratings to orders that could place an old friend in harms way. When a subordinate contacts a superior on a military justice matter that rests within the discretion of the subordinate, the superior must scrupulously avoid improper influence on the subordinate's discretion, regardless of whether their relationship is otherwise characterized by friendship.

In the present case, CAPT Schork, like the convening authority in *Gerlich*, testified that his superior's comment made him reexamine his position. The next day, CAPT Schork withdrew from the pretrial agreement. In his testimony, CAPT Schork, like the convening authority in *Gerlich*, attempted to deny that CAPT Eckart, through his question, had exerted improper command influence. This Court has in the past recognized that a subordinate may have difficulty "ascertaining for himself or herself the actual influence a superior has on that subordinate." *Gerlich*, 45 MJ at 313, citing *United States v. Rosser*, 6 MJ 267, 272 (CMA 1979); *United States v. Zagar*, 5 USCMA 410, 18 CMR 34 (1955); *United States v. Adamiak*, 4 USCMA 412, 15 CMR 412 (1954). Because the record is clear that it was the prompting of the acting convening authority that caused CAPT Schork to rethink his position and withdraw from the pretrial agreement, the military judge correctly identified unlawful command influence.

I disagree with the majority's suggestion that transferring the case to a different chain of command cured the unlawful command influence. At the time of the contact between CAPT Schork and CAPT Eckart, appellant had entered into a pretrial agreement. A convening authority has discretion to withdraw from a pretrial agreement at any time before the accused has begun performance. *See* RCM 705(d)(4)(B), Manual for Courts–Martial, United States (1998 ed.). Like other discretionary acts by officials in the court-martial process, however, such a withdrawal cannot properly be the product of unlawful command influence.

In this case, the convening authority's discretion was tainted by unlawful command influence. Transferring the case ensured that any action taken after the transfer would be free from the taint of unlawful command influence, but it did not remove the taint of unlawful command influence from the discretionary action already taken.

Even though the new convening authority would have had the right to withdraw from the pretrial agreement after the transfer, the prejudice flows from the circumstances of the case. A decision to abide by an agreement already in place is qualitatively different from the decision-making process that goes into the negotiation of a new pretrial agreement. Appellant was prejudiced by CAPT Schork's failure, after concluding that his conversation with CAPT Eckart had at least the appearance of impropriety, to transfer appellant's case with the original pretrial agreement intact. At that point, until appellant acted in reliance on the agreement, the new convening authority would have had the right to withdraw from the agreement, but appellant would not have had the unfair burden of having to try to negotiate a new agreement as a direct result of the unlawful command influence.