RYAN, Judge,
with whom COX, Senior Judge, joins
(dissenting):
I agree with the majority that whether the command has unlawfully influenced a court-martial is a question of law that we review de novo. See United States v. Salyer, 72 M.J. *429 415, 423 (C.A.A.F. 2013). I dissent, however, for two reasons.
First, the facts that inform this legal question “are reviewed under a clearly erroneous standard.” United States v. Villareal, 52 M.J. 27, 30 (C.A.A.F.1999). And where a military judge makes “detailed findings of fact[] and these findings are clearly supported by the record,” we adopt them into our de novo analysis. Id. Nonetheless, the majority effectively ignores the military judge’s findings of fact and suggests, without explicitly holding, that the Government’s actions in this case amounted to an unlawful effort to unseat a military judge. See Salyer, 72 M. J. at 425-27.
Second, because there is no showing that Appellant actually received an unfair trial, the majority must rely on the doctrine of apparent unlawful command influence to reach its remedy of choice in this case— dismissal with prejudice. This is highly problematic. “We grant a military judge broad discretion in crafting a remedy to remove the taint of unlawful command influence, and we will not reverse ‘so long as the decision remains within that range.’ ” United States v. Douglas, 68 M.J. 349, 354 (C.A.A.F.2010) (quoting United States v. Gore, 60 M.J. 178, 187 (C.A.A.F.2004)). Furthermore, “[w]e have looked with favor on military judges taking proactive, curative steps to remove the taint of unlawful command influence,” and noted that dismissal is a remedy of “last resort.” Id. at 354. This Court has repeatedly emphasized that dismissal “is a drastic remedy and courts must look to see whether alternative remedies are available.” Gore, 60 M.J. at 187.
Contrary to this well-established precept of law, the majority discounts the curative steps undertaken by Colonel (Col) Richardson, the replacement military judge, and dismisses this case with prejudice. But prescribing such a drastic remedy amounts to an unwarranted windfall where, due to the curative measures undertaken by Col Richardson, Appellant cannot show that the Government’s actions caused him to receive an unfair trial or that “a reasonable observer would have significant doubt about the fairness of [his] court-martial.” United States v. Lewis, 63 M.J. 405, 415 (C.A.A.F.2006). The mere fact that the Government’s conduct had the “effect” of leading the initial military judge to recuse himself, without more, should not compel us to dismiss the charges with prejudice. But see Salyer, 72 M.J. at 428.
Here, Col Richardson decided, after hearing testimony from multiple witnesses and the parties’ arguments, to remedy the appearance of unlawful command influence by corrective action other than dismissal — a decision based on detailed findings of fact that were supported by evidence in the record. Because “there was no abuse of discretion in the type of corrective action decided upon by [Col Richardson],” Douglas, 68 M.J. at 354, and, indeed, the corrective action removed the taint of apparent unlawful command influence from Appellant’s court-martial, id., I would affirm the decision of the United States Navy-Marine Corps Court of Criminal Appeals (NMCCA). To hold otherwise fails to accord proper deference to Col Richardson’s factual determinations and implies that a defendant is entitled to a particular military judge,[1] such that there can be no cure — save for dismissing the charges with prejudice — when a military judge recuses himself during a proceeding. That neither is nor should be the law.
A.
The events that gave rise to Appellant’s allegation of unlawful command influence are *430 as follows: (1) after Lieutenant Colonel (LtCol) Mori ruled that a “minor” was defined as a child under the age of sixteen, instead of under the age of eighteen as defined in the federal child pornography statute, the Government looked at LtCol Mori’s personnel file to confirm a rumor that LtCol Mori had a “very young wife”; (2) the Officer-in-Charge (OIC) made a phone call to the Circuit Military Judge of the Western Pacific Judicial Circuit (CMJ), who was LtCol Mori’s immediate supervisor, informing him that the Government was planning to voir dire LtCol Mori on this personal matter and move for his disqualification; (3) when LtCol Mori called the CMJ to speak with him about an unrelated evidentiary matter, the CMJ informed him of the OIC’s phone call; and (4) the Government voir dired LtCol Mori on the age of his wife and moved for his disqualification.
Ultimately, LtCol Mori recused himself and was replaced by Col Richardson. The defense filed a motion to dismiss for unlawful command influence and a hearing was held. At the hearing several witnesses testified as to the events that formed the basis of the alleged unlawful command influence. The military justice officer (MJO) testified that he was “prompted ... to pull up [LtCol] Mori’s [personnel file]” because “the government was looking for some reason why [LtCol] Mori” had defined “minor” as under the age of sixteen, and someone in the prosecutor’s office had mentioned that LtCol Mori had a “very young wife.” He further stated that there was “absolutely no intent to embarrass the military judge .... [t]he sole purpose [was] to attempt to figure out if there were any outside influences in his decision.”
Additionally, the OIC testified at length as to his reasons for calling the CMJ. Along with trial counsel and the MJO, the OIC was “perplexed by” LtCol Mori’s ruling as to the definition of “minor.” When the MJO showed him LtCol Mori’s personnel file, which indicated that his wife was seventeen years of age at the time they wed, the OIC believed “at that point there was a relevant issue for the government that suggested bias on the part of [LtCol Mori].” He further testified that, in light of the personal nature of the issue on which LtCol was to be voir dired and the fact that the trial was under way, he “owed the [CMJ] a professional courtesy to let him know that a significant event was about to happen.” When asked by defense counsel whether his intent in calling the CMJ was to have LtCol Mori reverse his decision, the OIC stated that “it was not.”
Consistent with the evidence produced at the hearing, Col Richardson made the following findings: (1) the OIC’s phone call to the CMJ was “reasonably well-intentioned but nonetheless [an] unwise decision”; (2) it was “an appearance problem when that phone call [led] to a series of actions resulting in the military judge finding himself in a position where he does not feel like he can continue in the trial”; and (3) “the government had a good-faith basis for the question that they asked of [LtCol] Mori, that it was logically connected to a possible bias in the case.”
Applying the law to these findings, Col Richardson concluded that (1) “the Government was well within [its] rights based on these facts to inquire” into the age of LtCol Mori’s wife at the time they wed, but (2) the OIC’s phone call to the CMJ and the subsequent recusal of LtCol Mori created the appearance of unlawful command influence. As a remedy for the apparent unlawful command influence, Col Richardson refused to reconsider any of LtCol Mori’s “defense friendly” rulings. Appellant did not seek any additional remedies.
B.
Where a court-martial has been unlawfully influenced, we review a military judge’s choice of remedy for an abuse of discretion. Douglas, 68 M.J. at 354. An abuse of discretion means that “ ‘when judicial action is taken in a discretionary matter, such action cannot be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.’ ” Gore, 60 M.J. at 187 (quoting United States v. Houser, 36 M.J. 392, 397 (C.M.A.1993)). *431 “This Court has recognized that ‘a military judge can intervene and protect a court-martial from the effects of unlawful command influence.’ ” Douglas, 68 M.J. at 364 (quoting United States v. Biagase, 50 M.J. 143, 162 (C.A.A.F.1999)). We grant a military judge broad discretion in crafting a remedy to remove the taint of unlawful command influence, and this Court has repeatedly emphasized that dismissal “is a drastic remedy and courts must look to see whether alternative remedies are available.” Gore, 60 M.J. at 187.
Here, based on detailed findings of fact that were supported by the record, Col Richardson crafted a “specifically tailored” remedy “aimed at ameliorating the effects of [the unlawful command influence],” Douglas, 68 M.J. at 355, to which defense counsel did not object or request the addition of further remedial measures. In doing so, he exercised reasonable discretion, see id., and his decision should not be disturbed unless this Court “ ‘has a definite and firm conviction’ ” that he “ ‘committed a clear error of judgment,’ ” Gore, 60 M.J. at 187 (quoting Houser, 36 M.J. at 397).
Nonetheless, the majority concludes that Col Richardson’s curative steps were insufficient because “any remedy short of dismissal at this stage would effectively validate the Government’s actions.” Salyer, 72 M.J. at 428. Ostensibly, the majority is unconcerned with “[w]hether the Government’s primary motive was to remove a properly detailed military judge from the case through inappropriate means,” id. at 428, yet it readily concludes that:
[a]n objective, disinterested observer, fully informed of these facts and circumstances, might well be left with the impression that the prosecution in a military trial has the power to manipulate which military judge presides in a given case depending on whether the judge is viewed as favorable or unfavorable to the prosecution’s cause
id. at 427, and describes the Government as “improperly succeeding] in getting the military judge to recuse himself from Appellant’s court martial,” and taking actions which “strike at the heart of what it means to have an independent military judiciary and indeed a credible military justice system.” Id. at 428. Such language, when viewed in conjunction with the majority’s reliance on Lewis, all but expressly holds that the Government’s actions were “an effort to unseat a military judge based on the trial counsel’s animosity toward the military judge, to secure a more favorable ruling, or to cause the assignment of an alternative military judge.” Id. at 425 (citing Lewis, 63 M.J. at 414).
The problem with this view is that Col Richardson accepted the Government’s representations that the call to LtCol Mori’s supervisor was not motivated by a desire to get him to reverse his ruling. Thus, while the call was undoubtedly improper, the animus the majority attributes to it is not supported by the military judge’s findings or the record. Moreover, the majority’s broad conclusion that “[t]rial counsel made no logical nexus between the wife’s age at marriage and the ruling regarding the age of a minor,”[2] Salyer, 72 M.J. at 425, is, quite simply, contradicted by both the record and Col Richardson’s findings.
Even if we were authorized to make findings of fact, the record does not support the majority’s vague conclusions. There are insufficient facts on the record to determine why the Government wanted the age of a minor to be set at eighteen instead of sixteen. Nevertheless, the majority uses this lack of a record to suggest that improper reasons must have motivated the Government to both contest the military judge’s *432 ruling and challenge the military judge for cause. Salyer, 72 M.J. at 425-26. The majority bolsters its conclusion that there was no legitimate prosecution strategy behind the Government’s conduct by further finding that because the Government had sufficient evidence to convict Appellant with the lower age imposed by the military judge, the ruling was not critical to the Government’s prosecution of its case. Id. at 425. This reasoning ignores courtroom realities by undervaluing the Government’s advantage in possessing overwhelming — vice sufficient — proof of an offense for findings, and the import of quantum of evidence at sentencing.
Moreover, even assuming that the existence of alternative means of challenging the military judge’s ruling precludes the Government from seeking recusal, it is at best dubi-tante whether the “normative” methods proposed by the majority were available to the Government in this case. See id. at 426. Whether the Government could have filed an interlocutory appeal under Article 62, UCMJ, 10 U.S.C. § 862 (2006), requesting review of LtCol Mori’s decision to instruct the jury that a “minor,” for purposes of the Article 134, UCMJ, clause 2, child pornography specifications, is defined as a child under the age of sixteen is questionable. See id. Article 62, UCMJ, authorizes government appeals of only the rulings and orders that are listed in the statute. LtCol Mori’s ruling as to the definition of a “minor” does not appear to be (1) “[a]n order or ruling which excludes evidence that is substantial proof of a fact material in the proceeding,” Article 62(a)(1)(B), UCMJ, since, as the majority notes, only two images of child pornography were required for conviction and the evidence admitted under the limitations set by LtCol Mori’s ruling depicted eight to ten images of “subjects who are clearly under sixteen, and some appear to be under the age of ten,” Salyer, 72 M.J. at 425; or (2) an order or ruling that otherwise falls within Article 62, UCMJ’s purview. The mere fact that recusal was sought simply does not establish a malevolent purpose as a matter of law, and without a malevolent purpose, there is no basis for dismissal with prejudice.[3]
C.
If, in fact, Col Richardson’s findings of fact were clearly erroneous and the Government’s actions could only be viewed as an “an effort to unseat a military judge based on the trial counsel’s animosity toward the military judge, to secure a more favorable ruling, or to cause the assignment of an alternative military judge,” Salyer, 72 M.J. at 425, the majority’s remedy would make some sense as Lewis would control. See Lewis, 63 M.J. at 414. But that is not what the majority claims to hold. Rather, it purportedly disturbs none of Col Richardson’s findings with regard to the unlawful command influence motion and anemically concludes that “[wjhether the Government’s primary motive was to remove a properly detailed military judge from the case through inappropriate means or not, it had that effect.” Salyer, 72 M.J. at 428.
Taking the majority at its word, and in light of its complete lack of discussion overruling Col Richardson’s findings of fact, the decision to dismiss the charges with prejudice is a remarkable and unwarranted extension of Lewis, where this Court concluded that “under the unique circumstances of th[e] case” — namely, the government having engaged in an “orchestrated effort to unseat *433 [the military judge]” and “compelled [the military judge] to remove herself’ — the “drastic remedy” of dismissal was warranted to ameliorate the resulting unlawful command influence. Lewis, 63 M.J. at 407, 414, 416.
In Lewis, the Court held that dismissal was warranted where the staff judge advocate (SJA) and trial counsel “wanted to ensure that a given military judge, properly detailed and otherwise qualified, would not sit on Lewis’s case,” and, “[i]n the end, the [government achieved its goal through unlawful command influence.” 63 M.J. at 416. We noted that while both the accused and the government are “ ‘permitted to question the military judge and to present evidence regarding a possible ground for disqualification,’ ” id. at 414 (quoting R.C.M. 902(d)(2)), “neither party can usurp the authority of the service secretaries or Judge Advocates General by removing or unseating properly certified and detailed military judges,” id.
This Court observed that trial counsel and the SJA had done just that in conspiring together in an “orchestrated effort” to unseat the military judge. Id. The first replacement military judge decided to disqualify himself because he could not be impartial where “ ‘the manner in which [trial counsel] handled the voir dire ... offend[ed] [him]’ ” and “the SJA’s crass, sarcastic, and scurrilous characterization of the social interaction between [the military judge] and Ms. [JS], besp[oke] an ignorance, prejudice, and paranoia on the part of the government.” Id. at 411 (first alteration in original). The government’s challenge to the military judge rested on nothing more than “suggestion, innuendo,” and the SJA’s own “gratuitous characterization of [the military judgej’s relationship with Ms. JS,” and the effort to unseat the military judge “was a continuation of an ongoing effort to remove [her] from any case in which Ms. JS served as civilian defense counsel.” Id. at 414. In light of these facts, we concluded that the government “exceeded any legitimate exercise of the right conferred upon the [government to question or challenge a military judge.” Id. We did not hold that the government may not challenge a military judge where it believes there is actual bias or an appearance of bias.
The facts of this case are not Lewis. Here, there is no evidence that the OIC or trial counsel had ever tried to remove LtCol Mori from a previous ease or that trial counsel was acting as the OIC’s “instrument in the courtroom.” Id. Most importantly, although defense counsel claimed that “there was an orchestrated Government effort ... to remove [LtCol Mori]” and characterized the Government’s voir dire of LtCol Mori as “meritless,” Col Richardson rejected that argument, finding that the OIC’s phone call to the CMJ was “well-intentioned” and that “the Government had a well grounded factual basis for inquiring into [the age of LtCol Mori’s wife when they wed].” See supra note 2.
Quite strangely, the majority nevertheless appears to hold that Lewis controls where the “effect” of the Government’s actions is that the military judge recuses himself, regardless of whether “the Government’s primary motive was to remove a properly detailed military judge from the case.” Salyer, 72 M.J. at 428. While reasonable minds might differ as to the motivation for the Government’s conduct, such a determination is undoubtedly factual. And while this Court should not supplant Col Richardson’s findings of fact with its own simply because we would have reached a different conclusion with appellate hindsight, it certainly should not displace Col Richardson’s remedies with its own extreme remedy without first holding that Col Richardson’s findings of fact were clearly erroneous. See United States v. Travers, 25 M.J. 61, 63 (C.M.A.1987) (“[W]e will not substitute our judgment for that of the military judge who was present in the courtroom and familiar with the sense of what was happening at the time of the [events].”). The majority, however, stops short of explicitly overruling Col Richardson’s findings of fact, maybe because it cannot dispute that no one was in a better position to assess the credibility and motivations of the witnesses at the hearing on unlawful command influence than Col Richardson himself.
D.
Accepting Col Richardson’s factual determination that the Government had a legiti *434 mate ground for voir diring and challenging LtCol Mori’s impartiality, the next question is whether LtCol Mori’s recusal otherwise actually or apparently prejudiced Appellant’s proceedings. Where, as here, unlawful command influence is established at the trial level, a presumption of prejudice is created. Douglas, 68 M.J. at 354 (citing Biagase, 50 M.J. at 150). Therefore, to affirm Appellant’s conviction “we must be convinced beyond a reasonable doubt that the unlawful command influence had no prejudicial impact on the court-martial.” Id. (citing Biagase, 50 M.J. at 150-51).
By refusing to reverse any of LtCol Mori’s defense-friendly rulings, including his ruling as to the definition of a “minor,” Col Richardson foreclosed the possibility that Appellant would be unfairly prejudiced by LtCol Mori’s recusal, and, following this ruling, no disinterested member of the public would harbor a significant doubt about the fairness of Appellant’s proceedings.
First, LtCol Mori’s ruling defining a “minor” as a child under the age of sixteen remained intact.
Second, while the majority asserts that “an objective member of the public would be left with the appearance and the impression that the Government obtained advantage from its actions” because “[w]e cannot know how the first military judge would ultimately have ruled” with regard to the marital privilege issue, Salyer, 72 M.J. at 428, the answer to that question is ultimately irrelevant to an objective, fully informed member of the public. Even assuming that LtCol Mori ultimately would have ruled that: (1) Appellant’s statement to his then-wife was privileged; and (2) Appellant did not subsequently waive that privilege, Col Richardson’s decision to admit Ms. Salyer’s testimony that Appellant told her that his computer was broken was harmless beyond a reasonable doubt: both an FBI agent and an NCIS agent testified that Appellant told them that he had disposed of his computer while on deployment because it was broken.
The majority inexplicably ignores the fact that there was cause to seek LtCol Mori’s recusal due to a perception of bias based on his personal circumstances and a related ruling that was, based on the law at the time, at least open to question, which is supported by the findings of fact made by Col Richardson, who saw and heard the witnesses at the unlawful command influence motion hearing. Where, in this case, LtCol Mori’s ruling as to the age of a “minor” remained intact after his recusal, no additional remedies were requested by Appellant, no unfairness regarding Col Richardson’s handling of the trial is alleged, and no harm to Appellant on findings or sentence has been demonstrated, I am hard-pressed to understand why we are in effect treating the Government’s missteps in this case as structural error.[4]
Because I am convinced beyond a reasonable doubt that the actual or apparent effects of any unlawful command influence in this case were ameliorated by Col Richardson’s remedial action and that Appellant received a fair trial, I would affirm the decision of the United States Navy-Marine Corps Court of Criminal Appeals.

. No one disagrees that "Appellant had a right to a timely trial before a military judge who had been properly detailed to hear the case,” see Salyer, 72 M.J. at 428, but this does not include the right to a particular military judge, and it is altogether unclear how Col Richardson somehow failed, under the circumstances of this case and in the eyes of an objective, reasonable, and fully informed member of the public, to protect Appellant’s rights to a fair trial or how the Government gained an advantage from him serving as the replacement military judge. Likewise, if the right at issue is characterized as Appellant’s "right to have the military judge detailed to the case be free from inappropriate attempts to remove him,” id. at 428 n. 15, to conclude that this right was violated, once more, requires one to ignore the contrary findings of the military judge who presided at the unlawful command influence motion hearing.

. Given LtCol Mori’s rationale for his ruling— that to rule otherwise would mean that it would be legal to have sexual intercourse with someone under eighteen, but illegal to take naked pictures of that person — the fact that his wife was under eighteen years of age when they married is logically related. See United States v. Nerad, 69 M.J. 138, 148 (C.A.A.F.2010) (holding that the Courts of Criminal Appeals have no authority to set aside a finding of possession of child pornography, charged under clauses 1 and 2 of Article 134, UCMJ, see Nerad, 69 M.J. at 149 (Stucky, J„ dissenting), based purely on equitable factors and remanding the case to determine whether the lower court had done so when it set aside the accused’s findings and reasoned that the accused could have, but for his existing marriage, legally had sex with the object of the nude pictures).

. I agree with the majority that the MJO's action in accessing LtCol Mori’s personnel record was highly improper and may even rise to the level of an ethical violation. However, the defense did not deem this fact sufficiently egregious to mention it in its motion to dismiss and only touched on it briefly at the motion hearing. Moreover, that the conduct may be improper does not answer the unrelated questions whether it was motivated by animus, as opposed to overzealousness, or whether Col Richardson took remedial steps that addressed the improper conduct such that Appellant received a fair trial, both in actuality and appearance. Cf. Smith v. Phillips, 455 U.S. 209, 220 n. 10, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) (“Even in cases of egregious prosecutorial misconduct, such as the knowing use of perjured testimony, we have required a new trial only when the tainted evidence was material to the case. This materiality requirement implicitly recognizes that the misconduct’s effect on the trial, not the blameworthiness of the prosecutor, is the crucial inquiry for due process purposes.” (internal citations omitted)).

. In the absence of an "orchestrated effort” to improperly remove LtCol Mori, Lewis, 63 M.J. at 414, the Government improperly accessing LtCol Mori’s personnel file to confirm a rumor regarding the age of his wife at the time they married, after "his sua sponte raising the age issue and then ruling quickly and curtly in the defense's favor,” should most properly be viewed through the lens of prosecutorial misconduct. But, of course, even assuming arguendo that the Government’s conduct rose to the level of prosecutorial misconduct, Col Richardson’s curative measures prevented Appellant's trial from being negatively affected by the misconduct such that no dismissal at all, let alone dismissal with prejudice, would be warranted. See Smith, 455 U.S. at 220 n. 10, 102 S.Ct. 940 (recognizing that the proper remedy in cases of prosecutorial misconduct depends on "the misconduct's effect on the trial” and not "the blameworthiness of the prosecutor”).