*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
HOLIFIELD, KIRKBY, and DALY
Appellate Military Judges

————————————

**UNITED STATES**
*Appellee*

**v.**

**Emmanuel NINA**
Lance Corporal (E-3), U.S. Marine Corps
*Appellant*

**No. 202200255**

————————————

Decided: 13 December 2023

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
J.P. Norman (arraignment)
Andrew L. Braden (trial)
Yong J. Lee (post-trial Article 39(a) hearing)

Sentence adjudged 3 August 2022 by a general court-martial convened at Marine Corps Base Camp Pendleton, California, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1, confinement for 12 months, forfeiture of all pay and allowances, and a bad-conduct discharge.[1]

————————————

[1] Appellant was credited with having served 181 days of pretrial confinement.

For Appellant:
*Captain Brian L. Farrell, USMC* Reserve

For Appellee:
*Lieutenant Colonel James A. Burkart, USMC*
*Major Candace G. White, USMC*

—————————————

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

—————————————

PER CURIAM:

Appellant was convicted, pursuant to his pleas, of one specification of wrongful introduction of a controlled substance with the intent to distribute, one specification of wrongful distribution of a controlled substance, one specification of wrongful possession of a controlled substance with the intent to distribute, and one specification of conspiracy to distribute a controlled substance, in violation of Articles 112a and 81, Uniform Code of Military Justice [UCMJ].[2]

In his sole assignment of error, Appellant asserts supervisory trial counsel committed unlawful influence by deciding not to submit a substantial assistance letter for a case he did not prosecute and by copying the trial counsel who did prosecute the case on his emails communicating that decision to civilian defense counsel. We find no prejudice and affirm.

## I. BACKGROUND[3]

Between 1 February and 1 November 2020, Appellant wrongfully introduced lysergic acid diethylamide [LSD] onto Marine Corps Base Camp Pendleton over twenty times. Appellant then sold the LSD to civilians and other Marines.

---

[2] 10 U.S.C. §§ 912a and 881.

[3] The facts below are taken from the Record, including, inter alia, a post-trial 39(a) UCMJ, hearing at which trial counsel testified. They also reflect the military judge's findings of fact in his ruling on Appellant's Motion to Dismiss or Other Appropriate Relief (Unlawful Influence). Appellate Ex. XI at 2-6.

After base law enforcement identified Appellant as a distributor of LSD, agents of the Naval Criminal Investigative Service [NCIS] interviewed him on 13 November 2020. During the interview, Appellant admitted to the wrongful use, possession, distribution, and introduction of LSD, and identified a number of Marines to whom he had sold LSD onboard Marine Corps Base Camp Pendleton.

Appellant was interviewed a second time by NCIS agents on 7 January 2021. During that interview, Appellant detailed his process for purchasing illegal drugs from his civilian drug dealer and identified a fellow Marine, Lance Corporal [LCpl] Fiallo, with whom he purchased the drugs. Appellant told investigators LCpl Fiallo also assisted him in the distribution of LSD.

Appellant subsequently entered into a plea agreement with the Government, agreeing to plead guilty to wrongful introduction of a controlled substance with the intent to distribute, wrongful distribution of a controlled substance, wrongful possession of a controlled substance with the intent to distribute, and conspiracy to distribute a controlled substance. Among its other provisions, the plea agreement stipulated that Appellant's sentence would include, at a minimum, a bad-conduct discharge, confinement between eight and twelve months, reduction to paygrade E-1, and forfeitures as awarded by the military judge. The plea agreement made no mention of substantial assistance. Ultimately, Appellant received a bad-conduct discharge, confinement for 12 months, a reduction to E-1, and forfeiture of all pay and allowances.

After sentencing, civilian defense counsel approached trial counsel inquiring about the possibility of trial counsel submitting a substantial assistance recommendation letter, pursuant to R.C.M. 1109(e)(2), to the Convening Authority on Appellant's behalf. Trial counsel responded to the request with a statement to the effect of, "Sounds good, I'll route it up."[4] Civilian defense counsel followed up with trial counsel via email the following day, 4 August 2022, seeking a "nominal reduction in confinement" in light of the fact Appellant named several individuals, particularly LCpl Fiallo, and provided information that was used "to press" them "to be more open in admitting their own misconduct."[5] Receiving no reply, civilian defense counsel followed up with another email on 9 August 2022.

Trial counsel responded the following day, apologizing "for letting this fall through" and indicating he had taken seriously ill.[6] Civilian defense counsel

---

[4] R. at 152.

[5] Appellate Ex. VII at 3.

[6] Appellate Ex. VII at 5.

responded, indicating that the submission deadline had not yet passed and that an extension could be sought if needed. Trial counsel replied, saying he had "a short submission drafted and ready" and was "pending a response back from the [senior trial counsel/regional trial counsel] on this."[7] Trial counsel added he was waiting "pending approval/denial to submit anything [in accordance with regional trial counsel] policy."[8] However, when trial counsel sent this email to civilian defense counsel, no such policy existed regarding R.C.M 1109 letters.[9]

The following week, trial counsel met with his supervisory counsel, Major [Maj] Alpha,[10] to discuss the Defense's request for a substantial assistance recommendation letter and to seek clarification on what level of assistance would warrant such a letter. After receiving Maj Alpha's opinion that Appellant's statements during his NCIS interviews did not constitute substantial assistance, trial counsel re-reviewed Appellant's actions and concluded that Appellant's actions did not justify a letter. Since trial counsel was dealing with other issues after his week-long illness, Maj Alpha offered to respond to civilian defense counsel regarding the letter request.[11]

On 24 August 2022, Maj Alpha emailed civilian defense counsel stating, "[t]here is no substantial assistance letter pursuant to Art. 53a(c)(2) in this case. I made the decision as [senior trial counsel] not to move forward and I am responsible for any misunderstanding between counsel."[12] In a subsequent email, civilian defense counsel asked Maj Alpha: "was it you that put the brakes on the assistance letter going to the [General Court Martial Convening Authority]?"[13] Maj Alpha replied: "Yes, it was my decision."[14]

Based on these emails, Appellant filed a Motion to Dismiss, alleging Maj Alpha committed unlawful influence as he "prevented" trial counsel from submitting a substantial assistance letter—in violation of R.C.M. 1109(e)(2).[15] In

---

[7] Appellate Ex. VII at 8.

[8] Appellate Ex. VII at 8.

[9] Appellate Ex. XI at 4.

[10] All names in this opinion, other than those of Appellant, his co-conspirator, the judges, and appellate counsel, are pseudonyms.

[11] Appellate Ex. XI at 5.

[12] Appellate Ex. VII at 12.

[13] Appellate Ex. VII at 17.

[14] Appellate Ex. VII at 18.

[15] Appellate Ex. VI at 1.

its response to the motion, the Government acknowledged that trial counsel "received advice" from Maj Alpha, but "not direction."[16] Ultimately, the Government argued, it was trial counsel who made the decision not to submit the letter.[17] To support this, trial counsel noted that his initial draft of the substantial assistance letter did not recommend a reduction of Appellant's sentence.[18]

At a post-trial Article 39(a), UCMJ, hearing, the military judge denied the motion. In his ruling, the military judge found that neither trial counsel nor Maj Alpha fully understood the rules applicable to substantial assistance letters.[19] He also found that trial counsel's responses to the civilian defense counsel had led the latter to believe trial counsel supported the request when, in fact, trial counsel had not made a decision to do so.[20] Furthermore, the military judge found that trial counsel's and Maj Alpha's "actions and inactions in communicating with the [civilian defense counsel] exacerbated the misunderstanding in this case."[21]

Additional facts necessary for our analysis are provided below.

## II. DISCUSSION

### A. Standard of Review and the Law

We review claims of unlawful influence de novo.[22] When assessing a military judge's findings of fact related to this issue, we apply a "clearly erroneous" standard.[23] Thus, "where a military judge made detailed findings of fact . . . and these findings are clearly supported by the record, we adopt them for our analysis."[24]

The prohibition against unlawful influence derives from a statutory mandate:

---

[16] Appellate Ex. VIII at 4.

[17] Appellate Ex. VIII at 4.

[18] Appellate Ex. VIII at 5.

[19] Appellate Ex. XI at 2-3.

[20] Appellate Ex. XI at 4.

[21] Appellate Ex. XI at 5.

[22] *United States v. Barry*, 78 M.J. 70, 77 (C.A.A.F. 2018).

[23] *Id.* (citing *United States v. Villareal*, 52 M.J. 27, 30 (C.A.A.F. 1999)).

[24] *Id.* (internal quotation marks omitted).

> No person subject to this chapter may attempt to coerce or, by any unauthorized means, attempt to influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case, or the action of any convening, approving, or reviewing authority or preliminary hearing officer with respect to such acts taken pursuant to this chapter as prescribed by the President.[25]

Unlawful influence occurs "when there is an improper manipulation of the criminal justice process which negatively affects the fair handling and/or disposition of a case."[26] The Court of Appeals for the Armed Forces [CAAF] has held that "protect[ing] the court-martial processes from improper command influence" is "fundamental to fostering public confidence in the actual and apparent fairness of our system of justice."[27]

This obligation likewise applies to "preventing interference from non-command sources."[28] The person exerting the unlawful influence need not wear "the mantle of command authority," as "Article 37(a) prohibits unlawful influence by all persons subject to the UCMJ."[29] Accordingly, the CAAF has held that, when examining more generalized allegations of unlawful influence, there is "no reason to deviate from the test . . . established to evaluate unlawful command influence."[30]

"To raise the issue, [Appellant] must (1) show facts which, if true, constitute unlawful command influence; (2) show that the proceedings were unfair; and (3) show that unlawful command influence was the cause of the unfairness."[31] Once the issue is raised, "the Government must prove beyond a reasonable doubt: (1) that the predicate facts do not exist; or (2) that the facts do not constitute unlawful command influence; or (3) that the unlawful command influence will not prejudice the proceedings or did not affect the findings and sentence."[32]

---

[25] UCMJ art. 37(a)(3).

[26] *United States v. Boyce*, 76 M.J. 242, 247 (C.A.A.F. 2017) (citations omitted).

[27] *Barry*, 78 M.J. at 76 (citations omitted).

[28] *Id.*

[29] *Id.* (citing *United States v. Gore*, 60 M.J. 178, 178 (C.A.A.F. 2004)) (emphasis omitted).

[30] *Id.* at 76-77.

[31] *United States v. Biagase*, 50 M.J. 143, 150 (C.A.A.F. 1999).

[32] *Id.* at 151.

**B. Supervisory Trial Counsel did not commit Unlawful Influence as Trial Counsel Independently Decided not to Submit a Substantial Assistance Recommendation Letter.**

Appellant argues Maj Alpha committed unlawful influence by violating R.C.M. 1109(e)(2), which states:

> A convening authority may reduce the sentence of an accused under this subsection only upon the recommendation of trial counsel who prosecuted the accused . . . The recommendation of trial counsel is the decision of trial counsel alone. No person may direct trial counsel to make or not make such a recommendation.

Appellant claims that, although Maj Alpha was not the trial counsel of record, he either (a) personally made the decision not to submit a substantial assistance letter recommending a reduction in sentence or (b) improperly influenced trial counsel's decision by copying the junior attorney on the email to civilian defense counsel in which Maj Alpha made clear his opposition to such a letter.

Assuming arguendo that Appellant has met his burden for raising unlawful influence, we conclude the Government has shown that there was, in fact, no unlawful influence.[33] In reaching this conclusion, we adopt the military judge's detailed findings of fact, as they are supported by the record and not clearly erroneous.[34]

At the time when civilian defense counsel first requested the letter, trial counsel did not understand the distinction between substantial assistance provisions in plea agreements pursuant to Article 53a(c)(2), UCMJ, and post-trial substantial assistance recommendations under R.C.M. 1109(e)(2).[35] Prior to the request, trial counsel had no experience with such letters. When trial counsel initially said, "Sounds good, I'll route it up," he meant he would consider civilian defense counsel's request and discuss it with his supervisory attorney before deciding whether to support the request.[36]

---

[33] Given the unique role of supervisory trial counsel, we leave open the question of whether supervisory trial counsel fall within R.C.M 1109(e)(2)'s term "trial counsel who prosecuted the accused" even when not specifically detailed to the case.

[34] The military judge's findings of fact are contained in Appellate Ex. XI. We note that the military judge specifically found that trial counsel's testimony at the post-trial hearing was "compelling" and "highly credible." Appellate Ex. XI at 2.

[35] Appellate Ex. XI at 2.

[36] Appellate Ex. XI at 2.

Trial counsel routinely consulted his chain of command on military justice issues with which he lacked experience.[37] Here, when trial counsel met with Maj Alpha, he was merely seeking training and advice regarding substantial assistance letters; he had not yet decided whether he would provide such a letter.[38] Trial counsel prepared the short draft letter—containing the facts of the matter but no recommendation—solely to facilitate the discussion.[39]

At the post-trial hearing, trial counsel testified[40] that it was his "personal" decision not to send the substantial assistance letter, repeatedly stating that the decision was "[his] alone."[41] Trial counsel told the military judge: "At no point did I, in my capacity as trial counsel, support a substantial assistance letter in this case."[42] In fact, trial counsel had entered the conversation with Maj Alpha "thinking this is not a case for substantial assistance."[43] After the conversation, trial counsel "felt affirmed that this was not a case for substantial assistance."[44] Accordingly, the military judge found that Maj Alpha did neither "threaten nor direct" trial counsel to refrain from submitting the letter, and that trial counsel made an "independent" decision not to provide the letter.[45] As the military judge's findings are clearly supported by the record, we agree.

Appellant points to the emails from trial counsel and Maj Alpha as evidence to the contrary. But, based on a review of the entire record, we agree with the military judge that trial counsel's "failure to directly inform [civilian defense counsel] of his independent decision not to support the [request], coupled with [Maj Alpha's] efforts to take care of the issue for [trial counsel] as supervisory counsel, *created an appearance that R.C.M. 1109(e)(2) was violated when in*

---

[37] Appellate Ex. XI at 2-3.

[38] Appellate Ex. XI at 4.

[39] Appellate Ex. XI at 3.

[40] A senior trial counsel not previously involved in the matter detailed herself to the case and called trial counsel to testify during the post-trial hearing.

[41] R. at 137-38.

[42] R. at 154.

[43] R. at 161.

[44] R. at 161.

[45] Appellate Ex. XI at 4.

*reality it was not.*"[46] In short, we are convinced beyond a reasonable doubt that there was no unlawful influence.[47]

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[48]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[46] Appellate Ex. XI at 6 (emphasis added). In Appellate Ex. XI at 5, the military judge also found that trial counsel and Maj Alpha "exacerbated the misunderstanding in this case" through their "actions and inactions" concerning the email correspondence with civilian defense counsel. We agree with this finding, as well.

[47] As we conclude there was no unlawful influence, we necessarily conclude there was no prejudice to Appellant's substantial rights thereby. And the mere appearance that R.C.M. 1109(e)(2) was violated here is not enough to merit relief. *See* UCMJ art. 37(c).

[48] Articles 59 & 66, UCMJ.