# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

---

**UNITED STATES**

**v.**

**Senior Airman AARON C. STUBBS**
**United States Air Force**

**ACM 38475**

**24 November 2014**

Sentence adjudged 10 August 2013 by GCM convened at United States Air Force Academy, Colorado. Military Judge: Grant L. Kratz.

Approved Sentence: Dishonorable discharge, confinement for 15 months, forfeiture of all pay and allowances, and reduction to E-1.

Appellate Counsel for the Appellant: Captain Jeffrey A. Davis.

Appellate Counsel for the United States: Lieutenant Colonel Steven J. Grocki; Major Daniel J. Breen; and Gerald R. Bruce, Esquire.

Before

HECKER, MITCHELL, and TELLER
Appellate Military Judges

OPINION OF THE COURT

This opinion is subject to editorial correction before final release.

HECKER, Senior Judge:

A general court-martial composed of officer members convicted the appellant, contrary to his pleas, of aggravated sexual contact, in violation of Article 120, UCMJ, 10 U.S.C. § 920. The adjudged and approved sentence consisted of a dishonorable discharge, confinement for 15 months, forfeiture of all pay and allowances, and reduction to E-1.

On appeal, the appellant contends (1) the evidence was legally and factually insufficient[1] to sustain his conviction, (2) the charge and specification failed to state an offense, (3) the military judge erred when instructing the panel on force and prior inconsistent statements, and (4) he received an unfair trial and clemency consideration due to unlawful command influence.[2] Finding no material prejudice to a substantial right of the appellant, we affirm.

*Background*

The charge in this case stemmed from an incident that occurred at the on-base residence of Staff Sergeant (SSgt) CR during the early morning hours of 23 December 2012. SSgt CR and the appellant, along with other military members and civilians, had attended a party at her active duty boyfriend's on-base house. SSgt CR knew the appellant as a co-worker of her boyfriend, and the two had become friends.

After SSgt CR and her boyfriend got into an argument, she left and returned home with her two year-old twins. Soon thereafter, the appellant contacted her and said he needed to talk to her in person. When she let him into her house, he told her he could no longer give her relationship advice because he was now romantically interested in her. The events that followed formed the basis of the appellant's conviction for aggravated sexual contact.

*Sufficiency of the Evidence*

We review issues of factual and legal sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). "The test for legal sufficiency of the evidence is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (citations and internal quotation marks omitted). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the accused's guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a

---

[1] The factual sufficiency part of this issue is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[2] The unlawful command influence issue is raised pursuant to *Grostefon*.

presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

The appellant was charged with aggravated sexual contact, in violation of Article 120, UCMJ. The specification stated the appellant "did . . . commit sexual contact upon [SSgt CR], to wit: touching the genitalia of [SSgt CR] with an intent to gratify [his] sexual desires . . ., by unlawful force, to wit: forcibly removing the pants of [SSgt CR]."

As charged, the elements of this offense are that the appellant (1) committed sexual contact upon SSgt CR and (2) did so by using unlawful force against her. *See Manual for Courts-Martial, United States* (*MCM*), Part IV, ¶ 45.a.(a), (c) (2012 ed.). The term "sexual contact" is defined, in relevant part, as "touching . . . any body part of any person, if done with an intent to arouse or gratify the sexual desire of any person." Article 120(g)(2)(B). The sexual contact alleged here was that the appellant touched SSgt CR's genitalia with an intent to gratify his own sexual desires. Furthermore, "unlawful force" includes "the use of such physical strength or violence as is sufficient to overcome . . . a person" when "done without legal justification or excuse." Article 120(g)(5), (6). The "unlawful force" alleged here was that the appellant forcibly removed SSgt CR's pants.

The appellant argues the evidence is legally insufficient to sustain his conviction because the Government failed to introduce evidence that the appellant's act of pulling down SSgt CR's pants "was an act of force to touch her genitalia, sufficient to overcome SSgt CR." Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), the appellant also argues the evidence is factually insufficient to sustain his conviction because SSgt CR's version of the event changed throughout the process, she was unable to remember certain facts, and her testimony was contradicted by phone and text messages.

In her testimony, SSgt CR described a series of events involving the appellant after he arrived at her house. Specifically, she testified that the appellant kissed her unexpectedly while she was sitting on her staircase. After she pushed him away, he leaned towards her for a second kiss but she again pushed him away. He told her not to move and began pulling down her pants while she tried to pull them back up and told him to stop. SSgt CR testified that she was also using her other hand to push him away from her. At some point, her pants were half down but she slipped away from him and ended up leaning against her couch. After she pulled her pants back up, the appellant resumed the same behavior. He pulled down her pants and underwear while making a vulgar comment. She repeatedly told the appellant to stop, while trying to hold her clothes on and push him away with her hand, but said the appellant overpowered her.

As the two struggled, SSgt CR rolled off the couch and onto the floor. She testified she "kind of like gave up" at that point, stating that the force he used to pull down her pants "overcame her will." She began crying and covering her face with her hands. SSgt CR then felt the tip of the appellant's penis on her vagina. The appellant stopped before penetrating her and left her residence after she asked him to do so several times.

SSgt CR left her two young children alone in the house and went to her boyfriend's house. Her boyfriend and several other witnesses testified about her highly emotional state. Although reluctant to share specific details, SSgt CR told her boyfriend and another friend that an incident had happened with the appellant who had grabbed her pants and "came on to" her. These witnesses described her as sobbing, shaken up, nervous, and scared. Other individuals saw her crying in her car outside the house. After the two returned to her house, her boyfriend observed SSgt CR crying and shaking throughout the night. The next morning, he found her sitting on the couch and appearing "out of it."

We find this evidence legally and factually sufficient to sustain the appellant's conviction for touching SSgt CR's genitalia by using unlawful force. We disagree with the appellant's claim that he cannot be convicted of using unlawful force because there was a "temporal gap" between his use of force to pull down her pants and his touching of her genitalia with his penis. Viewing the evidence in the light most favorable to the Government, a rational trier of fact could have found beyond a reasonable doubt that the appellant used unlawful force to commit sexual contact upon SSgt CR, based on his forcible actions involving SSgt CR's pants, especially when coupled with his other behavior in her house. We are ourselves convinced beyond a reasonable doubt as to the appellant's guilt.

*Failure to State an Offense*

Although he did not raise the issue at trial, the appellant now contends this specification fails to state an offense because it does not allege the required use of unlawful force to commit aggravated sexual contact.

Whether a specification fails to state an offense is a question of law that we review de novo. *United States v. Crafter*, 64 M.J. 209, 211 (C.A.A.F. 2006). Although failure to state an offense is not waived by a failure to raise the issue at trial, specifications challenged immediately at trial will be scrutinized more critically than those raised for the first time on appeal. *United States v. Fosler*, 70 M.J. 225, 230 (C.A.A.F. 2011); *United States v. Watkins*, 21 M.J. 208, 209 (C.M.A. 1986); Rules for Courts-Martial (R.C.M.) 905(e), 907(b)(1)(B). "A specification is sufficient if it alleges every element of the charged offense expressly or by necessary implication." R.C.M. 307(c)(3). This requires the charge and specification "first, contain the elements of the offense charged and fairly inform a defendant of the charge against which he must defend, and second,

enable him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Fosler*, 70 M.J. at 229 (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)) (internal quotation marks and alterations omitted).

The appellant did not object to the wording of this charge and specification at trial. We normally review the question of whether a specification is defective under a de novo standard. *United States v. Ballan*, 71 M.J. 28, 33 (C.A.A.F. 2012). However, when an appellant alleges for the first time on appeal that a specification fails to state an offense, we review the specification for plain error. *Id.* at 34 (citing *United States v. Cotton*, 535 U.S. 625, 631–32 (2002)). Under a plain error analysis of alleged defective specifications, the appellant "has the burden of demonstrating that: (1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the accused." *United States v. Girouard*, 70 M.J. 5, 11 (C.A.A.F. 2011) (citing *United States v. Powell*, 49 M.J. 460, 463–65 (C.A.A.F. 1998)).

We are not persuaded that there was error, plain or otherwise. The appellant argues the specification is faulty because it alleges force was used to remove SSgt CR's clothing and not to touch her genitalia. There was no request for a bill of particulars under R.C.M. 906(b)(6), motion to dismiss for failure to state an offense under R.C.M. 907(b)(1)(B), or motion for a finding of not guilty at the conclusion of the Government's case-in-chief under R.C.M. 917. Although the failure to request relief on any of those grounds is not dispositive of the issue before us, it undercuts the appellant's argument on appeal that he lacked notice of the legal theory being pursued by the Government. The plain language of the specification makes that legal theory clear. Furthermore, based on the vigorous effort undertaken by the appellant's defense counsel at trial, we find the appellant knew what legal theory he had to defend against.

*Military Judge's Instructions*

Whether a panel was properly instructed is a question of law reviewed de novo. *United States v. Payne*, 73 M.J. 19, 22 (C.A.A.F. 2014). However, where counsel fails to object to an instruction at trial, we review the military judge's instruction for plain error. *Id.*; *United States v. Tunstall*, 72 M.J. 191, 193 (C.A.A.F. 2013); R.C.M. 920(f).

*a. Force*

When defining "force" for the panel members, the military judge, without defense objection, instructed the panel:

> "Unlawful force" means an act of force done without legal justification or excuse. "Force" means the use of a weapon, use of such physical strength or violence as is sufficient to overcome, restrain, or injure a person, or inflicting physical

harm sufficient to coerce or compel submission by the alleged victim.

This language is taken verbatim from the definition of "force" contained in Article 120(g)(5) and (6), UCMJ; *see MCM*, Part IV, ¶ 45a.(g)(5), (6). The military judge's instruction was not error.

### b. Prior inconsistent statements

During an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session after the close of findings evidence, defense counsel asked the military judge to give the "prior inconsistent statement" instruction. The military judge agreed to do so but declined the defense request that the names of specific witnesses be put into the instruction. Instead, he instructed the panel:

> You have heard evidence that before this trial one or more witnesses may have made statements that may be inconsistent with their testimony here in court. If you believe that an inconsistent statement was made, you may consider the inconsistency in deciding whether to believe that witness' in-court testimony . . . .

The appellant argues the military judge abused his discretion by not inserting the name of SSgt CR into the instruction instead of using "one or more witnesses." He notes that the Military Judges' Benchbook suggests the name of such witnesses should be included in the instruction.

The military judge has substantial discretion in deciding on the instructions to give and whether a defense-requested instruction is appropriate. *United States v. Miller*, 58 M.J. 266, 270 (C.A.A.F. 2003). "This discretion must be exercised in light of correct principles of law as applied to the facts and circumstances of the case." *Id.* Denial of a requested instruction is error if the instruction is (1) correct, (2) not substantially covered in the main instruction, and (3) "'is on such a vital point in the case that the failure to give it deprived [the] defendant of a defense or seriously impaired its effective presentation.'" *Id.* (alteration in original) (quoting *United States v. Zamberlan*, 45 M.J. 491, 492–493 (C.A.A.F. 1997)). For the military judge's refusal to instruct the members to be error, all three prongs of the test in *Miller* must be satisfied.

The issue as to how the members should evaluate potential inconsistent statements by witnesses was substantially covered in the instruction provided and therefore the military judge did not abuse his discretion in declining to give the specifically-requested instruction. Furthermore, by the time the panel heard this instruction, SSgt CR had undergone significant cross examination about her prior statements and how they varied

from her testimony at trial. The defense's closing argument reiterated this point for the panel. The military judge's decision not to include SSgt CR's name in the instruction did not deprive the appellant of a defense or seriously impair its effective presentation.

*Unlawful Command Influence*

Pursuant to *Grostefon*, the appellant argues the military judge abused his discretion when he denied the defense unlawful command influence motion at trial. According to the appellant, it was impossible for him to receive a fair trial or post-trial processing due to the cumulative effect of comments made by the President, the Chief of Staff of the Air Force, the former and current Secretaries of Defense, and the General Court-Martial Convening Authority (GCMCA) who referred the appellant's case to trial.

Article 37(a), UCMJ, 10 U.S.C. § 837(a) states in relevant part: "No person subject to this chapter may attempt to coerce or . . . influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case . . . ." The mere appearance of unlawful command influence may be "as devastating to the military justice system as the actual manipulation of any given trial." *United States v. Ayers*, 54 M.J. 85, 94–95 (C.A.A.F. 2000) (internal quotation marks and citation omitted).

The burden of raising the issue of unlawful command influence rests with trial defense counsel. *United States v. Biagase*, 50 M.J. 143, 150 (C.A.A.F. 1999). The defense must: (1) "show facts which, if true, constitute unlawful command influence," and (2) show "the alleged unlawful command influence has a logical connection to the court-martial, in terms of its potential to cause unfairness in the proceedings." *Id.* (citation omitted). To meet the threshold for raising this issue, trial defense counsel is required to present "some evidence" of unlawful command influence. *Id.* If the defense meets that burden to raise the issue, the burden shifts to the Government, who must: "(1) disprove the predicate facts on which the allegation of unlawful command influence is based; (2) persuade the military judge that the facts do not constitute unlawful command influence; or (3) prove at trial that the unlawful command influence will not affect the proceedings." *United States v. Simpson*, 58 M.J. 368, 373 (C.A.A.F. 2003) (internal quotation marks and citation omitted). "'Whichever tactic the Government chooses, the quantum of proof is beyond a reasonable doubt.'" *Id*.

If this issue is litigated on the record at trial, the military judge's findings of fact are reviewed under a clearly-erroneous standard, but the question of command influence flowing from those facts is a question of law that this court reviews de novo. *United States v. Villareal*, 52 M.J. 27, 30 (C.A.A.F. 1999).

At trial, the appellant raised a motion to dismiss the charge and specification in his case due to actual and apparent unlawful command influence or, in the alternative, that a punitive discharge not be authorized as a punishment if he was convicted. The

appellant's argument was focused on general comments made by various senior officials, including the GCMCA. He also produced evidence of a "sexual assault prevention" training session held at the Air Force Academy two months prior to the appellant's trial. At this mandatory training session, the GCMCA spoke regarding sexual assaults in the military and recent criticism of convening authorities' clemency decisions in several high profile cases. In the view of trial defense counsel, the presentations at the recent training, especially when coupled with the publicity about sexual assault in the military, effectively pressured attendees to harshly punish members accused of sexual assault even if the facts do not support their guilt and demonstrated that the GCMCA would do the same.

In response, the Government submitted sworn affidavits from the appellant's commander, the Special Court-Martial Convening Authority (SPCMCA), and the GCMCA. Each commander stated their decision to prefer and forward the charges in this case had not been influenced by prior comments made by the President, elected officials in Congress, senior Department of Defense leaders, or senior Air Force commanders. The GCMCA also stated he would continue to exercise his independent judgment when making any clemency decisions in the appellant's case.

Relying on these affidavits, the military judge found that the accuser, the SPCMCA, and the GCMCA had not been and would not be improperly influenced by any outside pressure or comments regarding the handling of sexual assault cases. He also concluded, however, that the appellant had met his initial burden of presenting some facts which, if true, would create the appearance of unlawful command influence as to the potential panel members who may have heard the President's statement. The military judge informed trial counsel the burden had now shifted to the Government to disprove the existence of unlawful command influence or that it would not affect the trial.

The military judge indicated he would employ a "liberal grant squared" standard when ruling on defense challenges to prospective panel members based on unlawful influence concerns. Using that standard, the military judge granted two defense challenges. He denied a third challenge after finding the panel member had given "rather emphatic" answers regarding his ability to be independent and had said he felt no pressure to act in a particular way while sitting as a panel member. Notably, the defense did not use its peremptory challenge to remove this panel member.

During voir dire, the military judge received a 6 August 2013 memorandum entitled "Integrity of the Military Justice Process," which was signed by the Secretary of Defense to "reiterate [the Secretary's] expectations and those of the President regarding the integrity of the military justice system." The memorandum emphasized that decision makers within the military justice system (including court-martial panel members) must use their independent professional judgment based on the facts of each individual case and "not personal interests, career advancement, or an effort to produce what is thought to be the outcome desired by senior officials, military or civilian."

At the direction of the military judge, each panel member selected to sit on the appellant's panel was required to review this memorandum in open court. The military judge then denied the appellant's motion to dismiss, finding the Government met its burden of demonstrating beyond a reasonable doubt that actual or apparent unlawful command influence will play no role in the appellant's court-martial. He also found beyond a reasonable doubt that unlawful command influence will play no role in the GCMCA's actions during the post-trial processing of the case.

In reaching this conclusion, the military judge made detailed findings of fact and conclusions of law. Those findings of fact are not clearly erroneous. Furthermore, we conclude under the circumstances of this case, the Government has met its burden of demonstrating beyond a reasonable doubt that the fairness of the court-martial proceedings was not compromised by any unlawful command influence. An objective, disinterested, reasonable member of the public, fully informed of all the facts and circumstances, would not harbor a significant doubt about the fairness of the appellant's court-martial proceeding. *See United States v. Lewis*, 63 M.J. 405, 415 (C.A.A.F. 2006).

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are **AFFIRMED**.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court